**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **ABBEY MARIE JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:08-cv-157** |
| | ) | |
| **ANDALUSIA POLICE** | ) | |
| **DEPARTMENT, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendants the City of Andalusia (incorrectly identified as the "Andalusia Police Department"), Capt. Rusty Patterson, Officer Steven McGowin, and Officer Darren Raines submit this memorandum in support of their motion to dismiss. Capt. Patterson, Officer McGowin, and Officer Raines assert the defense of qualified immunity against all claims.

## I. STATEMENT OF THE CASE

This civil rights action arises from a traffic citation the plaintiff received after she admittedly turned her vehicle around and drove away from a police roadblock at 10:00 P.M. on a Saturday night. (See Compl. at 4, ¶ 14, at 6, ¶¶ 21-23, and at 9-10, ¶¶ 38-40.) The plaintiff claims the City of Andalusia and three of its police officers violated her civil rights by forcibly detaining her and by administering a breath test and questioning her without a Miranda warning. (See Compl. at 12-13, ¶¶ 52-55, at 15, ¶¶ 60-63, and at 17-18, ¶¶ 68-71.)

1

The complaint does not state a claim upon which relief can be granted, and the individual officers are entitled to qualified immunity on all claims.

## II. <u>STANDARD OF REVIEW</u>

### A. Failure to State a Claim

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." <u>Erickson v. Pardus</u>, 127 S. Ct. 2197, 2200 (2007).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964-65 (2007).

"Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Id.</u> at 1965.

For purposes of a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265 (1986).

### B. Qualified Immunity

Capt. Patterson, Officer McGowin, and Officer Raines invoke the defense of qualified immunity.

"Qualified immunity is a question of law that may be asserted in three ways: (1) on a pretrial motion to dismiss under Federal Rule of Civil Procedure

12(b)(6) for failure to state a claim; (2) as an affirmative defense in the request for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c); or (3) on a summary judgment motion pursuant to Federal Rule of Civil Procedure 56(e)." Ansley v. Heinrich, 925 F.2d 1339, 1347 (11th Cir. 1991).

"In reviewing a motion to dismiss based on qualified immunity, the district court is required to accept the factual allegations in the plaintiff's complaint as true and draw all reasonable inferences in favor of the plaintiff." Wilson v. Strong, 156 F.3d 1131, 1133 (11th Cir. 1998).

"Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

"When qualified immunity is asserted in the context of a motion to dismiss, we look to the pleadings to see if the plaintiff has successfully alleged the violation of a clearly established right." O'Rourke v. Hayes, 378 F.3d 1201, 1206 (11th Cir. 2004).

"Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." Saucier v. Katz, 533 U.S. 194, 200 (2001).

### III.  PLAINTIFF'S CLAIMS

The complaint contains four counts – one for each defendant.  Each count contains multiple constitutional claims against the defendant to which it relates.

To avoid repeating the same arguments across multiple counts, this memorandum is structured by claim, rather than by defendant.

## A. The Initial Investigatory Stop

The complaint alleges the plaintiff was unlawfully seized after she turned around and drove away within sight of a police roadblock. (See Compl. at 6, ¶¶ 21-22.) The complaint does not allege the plaintiff was actually seized at the roadblock. Rather, it alleges her seizure occurred by means of an investigatory stop at a location away from roadblock. (See Compl. at 7-8, ¶¶ 29-30.)

### 1. *Officer McGowin*

Officer McGowin is entitled to qualified immunity against the plaintiff's Fourth Amendment investigatory stop claim.

#### a. *Discretionary Function*

The complaint pleads that Officer McGowin was a sworn police officer for the City of Andalusia and was empowered to make arrests for violations of state and municipal statutes and ordinances. (See Compl. at 3, ¶ 10.) The complaint further pleads that Officer McGowin was working as a police officer during the incident. (See Compl. at 5, ¶ 16.)

"In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).

"To determine whether an official was engaged in a discretionary function, we consider whether the acts the official undertook 'are of a type that fell within

the employee's job responsibilities.'" Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004) (quoting Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004)).

"In assessing whether a police officer may assert qualified immunity against a Fourth Amendment claim, we do not ask whether he has the right to engage in unconstitutional searches and seizures, but whether engaging in searches and seizures is a part of his job-related powers and responsibilities." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1266 (11th Cir. 2004).

Based upon the complaint's allegations, Officer McGowin meets the threshold requirement to invoke the qualified immunity defense.

### b. Burden Shift

"If the official was acting within the scope of his discretionary authority, the burden shifts to the plaintiff." McClish v. Nugent, 483 F.3d 1231, 1237 (11th Cir. Apr. 11, 2007).

"Once the official has established that he was engaged in a discretionary function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity." Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004).

Because Officer McGowin was performing a discretionary function when he allegedly stopped the plaintiff, the plaintiff has the burden to demonstrate that Officer McGowin violated clearly established law when he stopped her for turning around and driving away after she approached a police roadblock.

"To determine whether an officer is entitled to qualified immunity, we engage in a two-step analysis." Garrett v. Athens-Clarke County, 378 F.3d 1274, 1278 (11th Cir. 2004).

"The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." Hope v. Pelzer, 536 U.S. 730, 736 (2002).

"If the conduct did not violate a constitutional right, the inquiry ends there." Robinson v. Arrugueta, 415 F.3d 1252, 1255 (11th Cir. 2005). "[I]f a defendant has not violated the law at all, he certainly has not violated clearly established law." Hudson v. Hall, 231 F.3d 1289, 1294 (11th Cir. 2000).

"However, if a constitutional violation can be made out on the plaintiff's facts, we then must determine 'whether, at the time of the incident, every objectively reasonable police officer would have realized the acts violated already clearly established federal law.'" Davis v. Williams, 451 F.3d 759, 762 (11th Cir. 2006) (quoting Garrett v. Athens-Clarke County, 378 F.3d 1274, 1278-78 (11th Cir. 2004)).

### c.  No Constitutional Violation

The complaint does not show a constitutional violation. Rather, it depicts a lawful investigatory stop, as authorized by the United States Supreme Court's opinion in Terry v. Ohio, 392 U.S. 1 (1967). See Illinois v. Wardlow, 528 U.S. 119, 123 (2000) ("This case, involving a brief encounter between a citizen and a police officer on a public street, is governed by the analysis we first applied in Terry.").

6

According to the complaint, the plaintiff was not actually stopped at the police roadblock.   Paragraph 26 states, "the Plaintiff left the area of the roadblock."   (See Compl. at 7, ¶ 25.)   The complaint alleges Officer McGowin made an investigatory stop of the plaintiff only after Officer Raines saw her avoid the roadblock: "Raines who was working at the roadblock observed the Plaintiff turn around and drive away from the roadblock."   (Compl. at 7, ¶ 26.)   The complaint alleges the plaintiff's seizure occurred after she arrived back at the parking lot where her journey began.   (See Compl. at 7-8, ¶¶ 29-31.)

At best, the roadblock can only be characterized as an unsuccessful attempt to seize the plaintiff by show of authority.   This fact pattern is controlled by the United States Supreme Court's decisions in California v. Hodari D., 499 U.S. 621 (1991), County of Sacramento v. Lewis, 523 U.S. 833 (1998), and Brendlin v. California, 127 S. Ct. 2400 (2007).

In Hodari, a police officer began to pursue the defendant on foot after the defendant fled upon sight of the officer.   See Hodari,499 U.S. at 622-23.   The defendant discarded cocaine during the chase.   Id. at 632.   The police officer eventually apprehended the defendant and recovered the cocaine.   Id.

At trial, the State of California conceded that the officer lacked reasonable suspicion to detain the defendant at the onset of the pursuit.[1]   See Hodari, 499 U.S. at 623 n.1.   The defendant moved to suppress the cocaine as the fruit of an unreasonable seizure.   Id. at 623.   The outcome of the case depended upon whether or not the officer's unsuccessful attempt to detain the defendant by

---

[1]     The Supreme Court doubted the wisdom of the State's concession.   See California v. Hodari, 499 U.S. 621, 623 n.1 (1991).

7

show of authority constituted a seizure, such that the defendant had already been illegally seized at the point he discarded the cocaine.

The Supreme Court framed the issue and holding as follows: "The narrow question before us is whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the suspect does not yield.  We hold that it does not."  Hodari, 499 U.S. at 626

The Supreme Court wrote, "assuming that [the officer's] pursuit in the present case constituted a 'show of authority' enjoining Hodari to halt, since Hodari did not comply with that injunction he was not seized until he was tackled."  Hodari, 499 U.S. at 629.

In County of Sacramento v. Lewis, a motorcycle driver and his passenger crashed while attempting to elude a police officer during a high-speed chase.  523 U.S. 833, 836-37 (1998).  The passenger died in the crash, and his parents sued the pursuing officer.  Id. at 837.

Invoking Hodari, the Supreme Court held that the officer's attempt to stop the motorcycle operator and his passenger during the pursuit did not amount to a Fourth Amendment seizure, because the attempt was unsuccessful.  Lewis, 523 U.S. at 843-44.  The Supreme Court concluded, "Attempted seizures of a person are beyond the scope of the Fourth Amendment."  Lewis, 523 U.S. at 845 n.7.

In Brendlin v. California, 127 S. Ct. 2400, 2405 (2007), the Supreme Court confirmed, "there is no seizure without actual submission."

In <u>Troupe v. Sarasota County</u>, 419 F.3d 1160, 1167 (11th Cir. 2005), the United States Court of Appeals for the Eleventh Circuit held that an officer's unsuccessful attempt to seize a motorist by firing at a vehicle's tires was not a seizure. The Eleventh Circuit invoked <u>Hodari's</u> holding that, "neither usage nor common-law tradition makes an *attempted* seizure a seizure." <u>Id.</u> (quoting <u>California v. Hodari D.</u>, 499 U.S. 621, 626 n.2 (1991)).

In this case, the complaint demonstrates that, at most, the police roadblock amounted to an *attempted* seizure. Under the alleged facts, the actual seizure occurred in a parking lot only after the plaintiff turned her vehicle around, drove away, and left the area of the roadblock. (<u>See</u> Compl. at 6-7, ¶¶ 22-26.)

The dispositive issue in this case is whether or not Officer McGowin had reasonable suspicion, or arguable reasonable suspicion, to detain the plaintiff at the time of the *actual* seizure. (<u>See</u> Compl. at 7, ¶¶ 25-26.)

Officer McGowin's decision to make an investigatory stop must be viewed objectively, through the eyes of a reasonable police officer. <u>See</u> <u>Terry v. Ohio</u>, 392 U.S. 1, 21 (1967) ("in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?").

The plaintiff's subjective misunderstanding of the nature of the police activity at the roadblock is irrelevant to this inquiry. <u>See</u> <u>McCormick v. City of Fort Lauderdale</u>, 333 F.3d 1234, 1239 n.2 & n.3, 1241 n.8, 1246 (11th Cir. 2003)

("McCormick's subjective perceptions have little bearing on how a reasonable officer in Officer Welker's position would have viewed McCormick's behavior.").

Regardless of the plaintiff's mindset, a reasonable police officer could have justifiably believed that criminal activity was afoot when the plaintiff turned her vehicle around and drove away after she approached a police roadblock at 10:00 P.M. on a Saturday night.  (See Compl. at 6-7, ¶¶ 19-28 (August 26, 2006, was a Saturday).)

"When used by trained law enforcement officers, objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person and for action on that suspicion."  United States v. Cortez, 449 U.S. 411, 419 (1981).

"Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion."  Illinois v. Wardlow, 528 U.S. 119, 124 (2000).

> In reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists. Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior.

Illinois v. Wardlow, 528 U.S. 119, 124-25 (2000).

In Smith v. State, the Alabama Court of Criminal Appeals held a police officer was justified to stop a motorist who took an evasive maneuver upon approaching a police roadblock.  515 So. 2d 149 (Ala. Crim. App. 1987).

Courts of other states have also affirmed the legality of an officer's decision to make an investigatory stop under these circumstances.

10

In <u>Coffman v. State</u>, 759 S.W.2d 573, 575-576 (Ark. Ct. App. 1988), the Arkansas Court of Appeals held that a motorist's efforts to avoid a roadblock by turning around constituted reasonable suspicion of criminal activity sufficient to justify a stop.  The court wrote, "To a trained police officer, the fact that a motorist attempted to avoid the roadblock in this case would surely excite a reasonable suspicion that, at the very least, the motorist was drunk, driving a stolen vehicle, did not have a valid driver's license, or had some car light defect." <u>Id.</u> at 575.

In <u>Snyder v. State</u>, 538 N.E.2d 961 (Ind. Ct. App. 1989), the Indiana Court of Appeals held that a driver's attempt to avoid a police roadblock by turning around justified an investigatory stop.

Like the plaintiff in this case, Snyder testified that he turned around because he thought the roadblock was an accident scene.  <u>Id.</u> at 963.  The parties had stipulated that, prior to the stop, Snyder had not committed a traffic violation and was not driving erratically.  <u>Id.</u>  The officer "testified that the sole reason he stopped Snyder was that Snyder was apparently trying to avoid the roadblock." <u>Id.</u>

The Indiana Court of Appeals held, "The better rule is that while a driver approaching a roadblock is not 'seized' until actually reaching the roadblock, a driver's attempt to avoid the roadblock, by making a turn around, does raise a 'specific and articulable fact' which gives rise to a reasonable suspicion on the part of a police officer that the driver may be committing a crime." <u>Id.</u> at 965.

11

In <u>Steinbeck v. Commonwealth</u>, 862 S.W.2d 912 (Ky. Ct. App. 1993), the Kentucky Court of  Appeals upheld the stop of a motorist who turned off short of a police roadblock.

Because the defendant turned off short of the roadblock, the court held the stop was governed by the law of reasonable suspicion, rather than roadblock analysis: "in the instant action appellant turned his vehicle from the road prior to the sobriety checkpoint.   Thus, the issue becomes whether there was an articulable and reasonable suspicion of criminal activity." <u>Id.</u> at 913.

In <u>Steinbeck</u>, "The only basis claimed by the deputy sheriff for the pursuit and stop of appellant was his belief that appellant was attempting to avoid the checkpoint due to intoxication." <u>Id.</u>   The court held the stop was justified by reasonable suspicion of criminal activity.  <u>Id.</u> at 914.  The time of day was also a factor in this decision.  <u>Id.</u>

In <u>State v. D'Angelo</u>, 605 A.2d 68 (Me.1992), the Supreme Judicial Court of Maine upheld the stop of a motorist who turned off upon approaching a police roadblock.

In <u>Oughton v. Director of Revenue</u>, 916 S.W.2d 462 (Mo. Ct. App. 1996), the Missouri Court of Appeals upheld the legality of a traffic stop when the defendant made a U-turn to avoid a police roadblock.  The court noted, "The majority position appears to be that such avoidance can provide the sole basis for such a stop." <u>Id.</u> at 464 n.2.

In <u>State v. Thill</u>, 474 N.W.2d 86 (S.D. 1991), the South Dakota Supreme Court held a police officer had reasonable suspicion to stop a motorist who

turned around to avoid a police roadblock.   The court held, "we find the avoidance of the police roadblock in this instance was sufficient to create an articulable and reasonable suspicion of criminal activity." <u>Id.</u> at 88.

In <u>Boches v. State</u>, 506 So. 2d 254 (Miss. 1987), the Mississippi Supreme Court held that the stop of a motorist who turned around upon approaching a roadblock was supported by reasonable suspicion.   According to the court, "When a motorist evades a police roadblock we have recognized that police may stop them and check the validity of their license tag, and inspection sticker. Such investigative stops of vehicles are clearly covered by the Fourth Amendment." <u>Id.</u> at 264.

In this case, the plaintiff has the burden to establish a constitutional violation.  She cannot do that.

The complaint specifically pleads that the plaintiff turned around to avoid what she now acknowledges was a police roadblock.  (<u>See</u> Compl. at 6, ¶¶ 21-22.) The complaint pleads that the plaintiff then drove away from the roadblock.  (<u>See</u> Compl. at 7, ¶ 25.)   The complaint pleads that the incident occurred at approximately 10:00 P.M. on August 26, 2006, which was a Saturday.   (<u>See</u> Compl. at 6, ¶ 19.)  The complaint pleads that the plaintiff made her turn-around within eyesight of the flashing blue lights of the police cars at the roadblock.  (<u>See</u> Compl. at 6, ¶ 21.)  The complaint pleads that the stop occurred only after the plaintiff left the area of the roadblock.  (<u>See</u> Compl. at 7, ¶ 25.)

Under the complaint's alleged facts, Officer McGowin's decision to make an investigatory stop was supported by reasonable suspicion.  The plaintiff cannot

meet her burden to demonstrate otherwise.  See  Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) ("Once the defendant establishes that he was in the scope of his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate.").

### d.  No Violation of Clearly Established Law

"If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.  On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."  Saucier v. Katz, 533 U.S. 194, 201 (2001).

The defendants contend the Court's inquiry should terminate at the first step.  Officer McGowin's investigatory stop the plaintiff's vehicle was justified by reasonable suspicion and, therefore, lawful.  A contrary holding would authorize drunk and unlicensed drivers and operators of stolen vehicles to avoid detection by simply turning around upon their approach to a police roadblock.

However, even if the Court finds that a police officer cannot lawfully stop a driver who turns around in front of a police roadblock and drives away at 10:00 P.M. on a Saturday night, Officer McGowin is still entitled to qualified immunity because the law was not clearly established at the time of the stop.

"Even 'constitutionally impermissible conduct' might not render government officials liable for civil damages if those actions had not been clearly established as violative of the Constitution when they occurred."  Carr v. Tatangelo, 338 F.3d 1259, 1266 (11th Cir. 2003).

14

"If reasonable public officials could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity." Storck v. City of Coral Springs, 354 F.3d 1307, 1314 (11th Cir. 2003).

"This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier v. Katz, 533 U.S. 194, 201 (2001).

"The question is whether the officer's conduct is objectively reasonable in light of the facts confronting the officer." Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

The defendants have identified eight state court decisions, including one from Alabama, that uphold the lawfulness of a police stop of a motorist who avoids a police roadblock. (See supra § III(A)(1)(c).)

The Supreme Court's admonition in Wilson v. Layne is particularly instructive in this case: "If judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy." Wilson v. Layne, 526 U.S. 603, 618 (1999).

In light of the above, Officer McGowin is entitled to qualified immunity against the plaintiff's Fourth Amendment claim based upon the investigatory stop.

### 2. Capt. Patterson and Officer Raines

Capt. Patterson and Officer Raines are also entitled to qualified immunity against the plaintiff's Fourth Amendment claim arising from the investigatory stop.

#### a. Discretionary Function

As with Officer McGowin, the complaint alleges that Capt. Patterson and Officer Raines were sworn police officers for the City of Andalusia and were empowered to make arrests for violations of state and municipal statutes and ordinances. (See Compl. at 3, ¶¶ 8-9.) The complaint further alleges they were on duty during the incident. (See Compl. at 5, ¶ 16.)

Based upon the complaint's allegations, Capt. Patterson and Officer Raines meet the threshold requirement to invoke the qualified immunity defense. See Mercado v. City of Orlando, 407 F.3d 1152, 1156 (11th Cir. 2005) ("In order for the defendants to claim protection for qualified immunity, they must first demonstrate that they were engaged in a discretionary function.").

#### b. Burden Shift

Because Capt. Patterson and Officer Raines were performing discretionary functions during the alleged events, the plaintiff has the burden to establish that they are not entitled to qualified immunity against her claims. Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004) ("Once the official has established that he was engaged in a discretionary function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity.").

### c.  No Constitutional Violation

The complaint alleges that Capt. Patterson and Officer Raines failed to intervene in Officer McGowin's seizure of the plaintiff.  (See Compl. at 15, ¶ 61, and at 17, ¶ 69.)

Because Officer McGowin's investigatory stop of the plaintiff was lawful, however, the plaintiff's claim against Capt. Patterson and Officer Raines for failure to intervene in that stop must fail.  There was no underlying constitutional violation upon which to base a duty to intervene.

### d.  No Violation of Clearly Established Law

To overcome Capt. Patterson's and Officer Raines's qualified immunity defense, the plaintiff has the burden to identify clearly established law that the officers violated by not intervening under her alleged facts.  See Jackson v. Sauls, 206 F.3d 1156, 1165 (11th Cir. 2000) ("The burden of showing that an officer violated clearly established law falls on the plaintiff, and a plaintiff's citation of general rules or abstract rights is insufficient to strip a § 1983 defendant of his qualified immunity.").

"For the law to be 'clearly established,' case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law."  Priester v. City of Riviera Beach, 208 F.3d 919, 926 (11th Cir. 2000).

"The unlawfulness must have been apparent."  Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).  "A plaintiff cannot strip a § 1983

17

defendant of her qualified immunity by citing to general rules or abstract rights."
Wilson v. Strong, 156 F.3d 1131, 1134 (11th Cir. 1998).

"General rules, propositions, or abstractions, such as acting with probable cause, do not determine qualified immunity."  Crosby v. Paulk, 187 F.3d 1339, 1345 (11th Cir. 1999).  "Qualified immunity is a sharply focused, situation bound analysis."  Crosby v. Paulk, 187 F.3d 1339, 1345 (11th Cir. 1999).

"When case law is needed to 'clearly establish' the law applicable to the pertinent circumstances we look to decisions of the U.S. Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state."  Marsh v. Butler County, 268 F.3d 1014, 1032-33 n.10 (11th Cir. 2001).

The defendants have not located any decision of the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, or the Alabama Supreme Court which clearly establishes that the officers' alleged actions were unlawful.

Capt. Patterson and Officer Raines are entitled to qualified immunity against the plaintiff's Fourth Amendment claim arising from the investigatory stop.

## B.  Fourth Amendment Claim Based on Use of Force

The complaint also alleges Officer McGowin used excessive force to detain the plaintiff and that Capt Patterson and Officer Raines failed to intervene.  All three officers are also entitled to qualified immunity against this claim.

### 1. *Officer McGowin*

In Section III(A)(1), <u>supra</u>, Officer McGowin demonstrated his entitlement to invoke the qualified immunity defense.  The plaintiff, therefore, has the burden to show that Officer McGowin violated clearly established law.

### a. *No Constitutional Violation*

As a matter of law, Officer McGowin's alleged use of force was de minimis and will not support an excessive force claim.

The complaint admits the plaintiff turned around and drove away from a police roadblock, which included patrol cars with flashing blue lights, at 10:00 P.M. on a Saturday night.  (<u>See</u> Compl. at 6-7, ¶¶ 19-25.)

The complaint also admits the plaintiff was stopped after a high speed police pursuit with lights and sirens:  "McGowin and other officers raced to their vehicles and initiated a high speed pursuit to apprehend the Plaintiff."    (Compl. at 7, ¶ 28.)

The complaint admits the plaintiff continued to drive away during the pursuit, although it claims the plaintiff was unaware of the pursuing officers.  (<u>See</u> Compl. at 7, ¶ 29.)  After the plaintiff finally stopped, she did not remain seated inside her vehicle and await further instructions from the officers, like most people.  (<u>See</u> Compl. at 8, ¶ 30.)  Instead, she exited her vehicle as police cars arrived with their lights and sirens activated.  (<u>See</u> Compl. at 8, ¶ 30.)

In response to the plaintiff's actions, the complaint alleges Officer McGowin screamed at the plaintiff, grabbed her neck, threw her against a vehicle, and handcuffed her.  (<u>See</u> Compl. at 8, ¶ 31.)  The complaint alleges Officer McGowin

told the plaintiff she was under arrest and later released her with a traffic citation.[2]  (See Compl. at 8, ¶ 31 and at 9, ¶ 38.)

"Though the facts must be taken in the light most favorable to [the plaintiff], the determination of reasonableness must be made from the perspective of the officer."  Robinson v. Arrugueta, 415 F.3d 1252, 1255 (11th Cir. 2005).

The plaintiff's subjective misunderstanding of the police roadblock and her claimed lack of awareness of the lights and sirens of the pursuing police vehicles are irrelevant factors.  See McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1239 n.2 & n.3, 1241 n.8, 1246 (11th Cir. 2003) ("McCormick's subjective perceptions have little bearing on how a reasonable officer in Officer Welker's position would have viewed McCormick's behavior.").

Viewed from the perspective of a reasonable police officer, these facts do not demonstrate a constitutional violation, much less a violation of clearly established law.

"In analyzing whether excessive force was used, courts must look at the totality of the circumstances."  Garrett v. Athens-Clarke County, 378 F.3d 1274, 1280 (11th Cir. 2004).

"We must look at the situation not with hindsight, but with the eye of the objectively reasonable officer on the scene."  Garrett v. Athens-Clarke County, 378 F.3d 1274, 1281 (11th Cir. 2004).

---

[2]  Under Alabama law, this is the correct procedure for issuing a traffic citation.  See Ala. Code § 32-1-4(a) (1975).

> "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

Graham v. Connor, 490 U.S. 386, 396-97 (1989) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir. 1973)).

> In making an excessive force inquiry, we are not to view the matter as judges from the comfort and safety of our chambers, fearful of nothing more threatening than the occasional paper cut as we read a cold record accounting of what turned out to be the facts. We must see the situation through the eyes of the officer on the scene who is hampered by incomplete information and forced to make a split-second decision between action and inaction in circumstances where inaction would prove fatal.

> Crosby v. Monroe County, 394 F.3d 1328, 1333-34 (11th Cir. 2004).

"Reconsideration will nearly always reveal that something different could have been done if the officer knew the future before it occurred. This is what we mean when we say we refuse to second-guess the officer." Carr v. Tatangelo, 338 F.3d 1259, 1270 (11th Cir. 2003) (citation omitted).

"We must avoid substituting our personal notions of proper police procedure for the instantaneous decision of the officer at the scene. We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day." Smith v. Freland, 954 F.2d 343, 347 (6th Cir. 1992).

"All the Constitution requires is that the force used be objectively reasonable, not that it be the absolute minimum necessary." Harrell v. Decatur County, 22 F.3d 1570, 1579 n.1 (11th Cir. 1994) (Dubina J., dissenting), *majority*

*opinion vacated and dissenting opinion adopted*, 41 F.3d 1494 (11th Cir. 1995).
"The reasonableness of any particular governmental activity does not necessarily
or invariably turn on the existence of alternative 'less intrusive' means." <u>Illinois
v. Lafayette</u>, 462 U.S. 640, 647 (1983).

"The Fourth Amendment does not require officers to use the least intrusive
or even less intrusive alternatives in search and seizure cases. The only test is
whether what the police officers actually did was reasonable." <u>Plakas v. Drinski</u>,
19 F.3d 1143, 1148 (7th Cir. 1994), *quoted with approval in* <u>Menuel v. City of
Atlanta</u>, 25 F.3d 990, 996-97 (11th Cir. 1994).

Officer McGowin's alleged screaming at the plaintiff did not convert
otherwise lawful conduct into a constitutional violation, or divest him of qualified
immunity.

In <u>Menuel v. City of Atlanta</u>, 25 F.3d 990, 992 n.3 (11th Cir. 1994) the
Eleventh Circuit found no constitutional violation despite the officer's
announcement of, "That bitch is going down," before he shot her.

In <u>Draper v. Reynolds</u>, 369 F.3d 1270, 1272 (11th Cir. 2004), the United
States Court of Appeals for the Eleventh Circuit held the officer was entitled to
qualified immunity despite his use of the words, "god damn it," "fucking," and
"ass," and his reference to plaintiff as a "son of a bitch" during the encounter.

The complaint does not describe the words Officer McGowin allegedly used.
Therefore, the allegations of screaming in this case are less severe than the
allegations of extreme profanity in <u>Menuel</u> and <u>Draper</u>.

Officer McGowin's alleged force actions also do not rise to the level of a constitutional violation.

"Government officials are not required to err on the side of caution." Marsh v. Butler County, 268 F.3d 1014, 1031 (11th Cir. 2001).

"Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. 386, 396 (1989).

"The application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000).

In Nolin v. Isbell, 207 F.3d 1253, 1255 (11th Cir. 2000), the United States Court of Appeals for the Eleventh Circuit held force did not rise to level of Fourth Amendment violation when the officer allegedly "grabbed [plaintiff] from behind by the shoulder and waist, threw him against a van three or four feet away, kneed him in the back, and pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and handcuffed him."

In Jones v. City of Dothan, 121 F.3d 1456, 1458 (11th Cir. 1997), the Eleventh Circuit held force did not rise to level of a Fourth Amendment violation when an officer allegedly "slammed" the plaintiff against a wall, kicked his legs apart, and required him to raise his hands above his head. The plaintiff in Jones was not arrested. Id. at 1459.

23

In <u>Post v. City of Ft. Lauderdale</u>, 7 F.3d 1552, 1559-60 (11th Cir. 1993), the Eleventh Circuit held force did not rise to level of a Fourth Amendment violation when the officer allegedly pushed the plaintiff into a wall.  The court held, "even though pushing Lirio against the wall might have been unnecessary, this pushing was not plainly unlawful."  <u>Id.</u>

In <u>Gold v. City of Miami</u>, 121 F.3d 1442, 1446 (11th Cir. 1997), the Eleventh Circuit held force did not rise to level of a Fourth Amendment violation when the suspect allegedly experienced pain from handcuffs for twenty minutes and skin abrasions for which he did not seek medical treatment.

In <u>Rodriguez v. Farrell</u>, 280 F.3d 1341, 1352 (11th Cir. 2002), the Eleventh Circuit held, "Painful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal."

In <u>Durruthy v. Pastor</u>, 351 F.3d 1080 (11th Cir. 2003), the Eleventh Circuit granted qualified immunity because the level of force was de minimis when the officer kneed the suspect in his back during handcuffing.

The complaint's alleged facts depict a motorist who turned around in front of a police checkpoint and drove away while police vehicles pursued with lights flashing and sirens wailing.  Upon finally stopping, the driver exited her vehicle without being instructed by the officer.  All of this occurred at 10:00 P.M. on a Saturday night.  (<u>See</u> Compl. at 6-8, ¶¶ 19-31.)

There is no allegation of physical injury.  Officer McGowin's alleged actions in grabbing the plaintiff, throwing her against her vehicle, and handcuffing her were not unreasonable in these circumstances.  (<u>See</u> Compl. at 8, ¶ 31.)

### b. No Violation of Clearly Established Law

"If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001).

"The burden of showing that an officer violated clearly established law falls on the plaintiff, and a plaintiff's citation of general rules or abstract rights is insufficient to strip a § 1983 defendant of his qualified immunity." Jackson v. Sauls, 206 F.3d 1156, 1165 (11th Cir. 2000).

The plaintiff cannot show that Officer McGowin's alleged actions violated clearly established law. Therefore, Officer McGowin is entitled to qualified immunity against the plaintiff's Fourth Amendment use of force claim.

### 2. Capt. Patterson and Officer Raines

Capt. Patterson and Officer Raines are also entitled to qualified immunity on the plaintiff's claim that they failed to intervene in Officer McGowin's use of force.

For one thing, the alleged facts do not show that Officer McGowin's use of force violated clearly established law. In the absence of an unlawful use of force by Officer McGowin, a duty to intervene could not arise.

Further, the alleged facts do not show that Capt. Patterson and Officer Raines were in a position to intervene. The complaint states, "As McGowin was arresting the Plaintiff, Patterson and Raines arrived in the parking lot. Patterson

and Raines both allowed the Plaintiff *to continue in custody* and did not intervene to protect the Plaintiff from McGowin." (Compl. at 9, ¶ 35 (emphasis added).) The plain meaning of Paragraph 35 indicates the plaintiff was already in custody by the time Capt. Patterson and Officer Raines arrived.

"In order for an officer to be liable for failing to stop another officer's unconstitutional use of deadly force, the officer must be in a position to intervene." Jackson v. Sauls, 206 F.3d 1156, 1174 (11th Cir. 2000).

"The heightened pleading requirement is the law of this circuit." GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1368 (11th Cir. 1998). "Some factual detail in the pleadings is necessary to the adjudication of § 1983 claims. This is particularly true in cases involving qualified immunity, where we must determine whether a defendant's actions violated a clearly established right." GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998).

"Qualified immunity is a sharply focused, situation bound analysis." Crosby v. Paulk, 187 F.3d 1339, 1345 (11th Cir. 1999). "A complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984).

"Under current Eleventh Circuit law, the plaintiff pursuing a § 1983 claim must come forward with specific facts, concerning each defendant, indicating that each defendant has not only violated a constitutional right, but a clearly established one." Edwards v. Alabama Dep't of Corr., 81 F. Supp.2d 1242, 1253 (M.D. Ala. 2000) (Thompson, J.).

The alleged facts do not establish a violation of clearly established law by Capt. Patterson or Officer Raines.  As such, they are entitled to qualified immunity against the § 1983 claim for failure to intervene.

## C.  Fifth Amendment Claim Based on <u>Miranda</u>

The officers are also entitled to qualified immunity against the plaintiff's Fifth Amendment claim based on <u>Miranda</u>.

### *1. Officer McGowin*

Paragraph 54 of the complaint alleges, "McGowin forced the Plaintiff to respond to his questioning and required the Plaintiff to take a breath test without advising the Plaintiff of her constitutional rights under the Fifth and Fourteenth Amendments to the Constitution of the United States of America."  (Compl. at 13, ¶ 54.)

Because the complaint demonstrates that Officer McGowin was performing a discretionary function, (see Compl. at 3, ¶ 10), he is entitled to raise the defense of qualified immunity.  See <u>Holloman ex rel. Holloman v. Harland</u>, 370 F.3d 1252, 1266 (11th Cir. 2004) (holding police officer engaged in searches and seizures is performing discretionary function).

The burden shifts to the plaintiff to show a violation of clearly established law.  See <u>McClish v. Nugent</u>, 483 F.3d 1231, 1237 (11th Cir. Apr. 11, 2007) ("If the official was acting within the scope of his discretionary authority, the burden shifts to the plaintiff.").

### a. No Constitutional Violation

#### i. Breath Test

A <u>Miranda</u> warning is not required before an officer administers a breath test to a motorist.  Because the motorist's blood alcohol content is non-testimonial in nature, it falls outside the protections of the Fifth Amendment. <u>See</u> <u>Schmerber v. California</u>, 384 U.S. 757, 761 (1966) ("We hold that the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature, and that the withdrawal of blood and use of the analysis in question in this case did not involve compulsion to these ends."); <u>Fillmore v. State</u>, 668 So. 2d 141, 144 (Ala. Crim. App. 1995) (holding administration of breath test without <u>Miranda</u> warning did not violate Fifth Amendment).

#### ii. Questioning

The plaintiff's claim regarding her alleged questioning without first being advised of her <u>Miranda</u> rights fails just as easily.  There is no constitutional right to a <u>Miranda</u> warning.  The <u>Miranda</u> requirement is prophylactic in nature.  Its violation will not give rise to a § 1983 claim.  <u>See</u> <u>Chavez v. Martinez</u>, 538 So. 2d 760, 772 (2003) ("Chavez's failure to read <u>Miranda</u> warnings to Martinez did not violate Martinez's constitutional rights and cannot be grounds for a § 1983 action").

### b. No Violation of Clearly Established Law

The complaint clearly does not state a § 1983 claim for a Fifth Amendment violation. Officer McGowin is entitled to qualified immunity against the plaintiff's Fifth Amendment claim.

### 2. Capt. Patterson and Officer Raines

Because Officer McGowin did not violate the plaintiff's Fifth Amendment rights, no liability for failure to intervene can arise. Capt. Patterson and Officer Raines are also entitled to qualified immunity against the plaintiff's Fifth Amendment claim for failure to intervene.

## D. Section 1983 Municipal and Supervisor Liability Claims

### a. No Respondeat Superior Liability

The City cannot be vicariously liable for its officers' alleged acts or omissions. The doctrine of respondeat superior does not apply to § 1983 claims. See Monell v. Department of Social Servs., 436 U.S. 658, 694 (1978) ("A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."); Snow v. City of Citronelle, 420 F.3d 1262, 1270 (11th Cir. 2005) ("A municipality may not be held liable under section 1983 on a theory of respondeat superior.")

### b. No Direct Municipal Liability

The complaint also does not state a direct claim for municipal liability. There is no factual showing of an underlying constitutional violation upon which to base a direct municipal liability claim.

"The Supreme Court has placed strict limitations on municipal liability under § 1983." Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998).

"To impose section 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004).

"Although [§ 1983] provides the citizen with an effective remedy against those abuses of state power that violate federal law, it does not provide a remedy for abuses that do not violate federal law." Collins v. City of Harker Heights, 503 U.S. 115, 119 (1992).  Municipal liability cannot attach absent an underlying constitutional violation.  See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).

The complaint's alleged facts do not show an underlying constitutional violation.  Therefore, the City of Andalusia is entitled to dismissal of the plaintiff's municipal liability claim.

### c. Qualified Immunity Against Supervisor Liability

Capt. Patterson is also entitled to qualified immunity against the plaintiff's supervisor liability claim.  See Cottone v. Jenne, 326 F.3d 1352, 1361-62 (11th Cir. 2003) (holding qualified immunity defense applies to individual capacity claims against supervisors).

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of

respondeat superior or vicarious liability." <u>Hartley v. Parnell</u>, 193 F.3d 1263, 1269 (11th Cir.1999) (internal quotation marks and citation omitted).

"Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003).

As with the City of Andalusia, the complaint does not show an underlying constitutional violation upon which to base a supervisor liability claim. The complaint certainly does not show a violation of clearly established law.

Capt. Patterson is entitled to qualified immunity against the supervisor liability claims.

**E.  Official Capacity Claims**

The official capacity claims against Capt. Patterson, Officer McGowin, and Officer Raines should be dismissed as duplicative of the claims against the City of Andalusia. <u>See</u> <u>Busby v. City of Orlando</u>, 931 F.2d 764 (11th Cir. 1991) ("Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials").

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Capt. Patterson, Officer McGowin, and Officer Raines move to dismiss all claims against them based on the defense of qualified

31

immunity.  The City of Andalusia moves to dismiss all claims against it for failure to state a claim upon which relief can be granted.

<div style="margin-left:40%;">

**s/ James H. Pike**
James H. Pike (PIK003)
Attorney for Defendants
The City of Florala, Alabama, Capt. Rusty Patterson, Officer Steven McGowin, and Officer Darren Raines

</div>

OF COUNSEL:

SHEALY, CRUM & PIKE, P.C.
P.O. Box 6346
Dothan, Alabama  36303-6346
Tel. (334) 677-3000
Fax (334) 677-0030
E-mail: jpike@scplaw.us

<center>

**CERTIFICATE OF SERVICE**

</center>

I, James H. Pike, certify that on May 2, 2008, I electronically served this document upon:

James R. Murray
420 East Pine Avenue
Crestview, Florida  32536

Eric D. Stevenson
WHIBBS, RAYBOUN & STONE
105 East Gregory Square
Pensacola, Florida  32502

<div style="margin-left:40%;">

**s/ James H. Pike**
James H. Pike

</div>