**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

**ABBEY MARIE JOHNSON**
                    Plaintiff,

Vs.                                    Civil Action No: 2:08-cv-157

**ANDALUSIA POLICE DEPARTMENT**;
and **CAPT. RUSTY PATTERSON**,
Andalusia Police Department; and
**OFFICER DARREN RAINES**;
Andalusia Police Department; and
**OFFICER STEVEN MCGOWIN**,
Andalusia Police Department;
                              Defendants
_____/

## <u>PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>

Comes now the Plaintiff by and through the undersigned Counsel, pursuant to the court's order of May 2nd, 2008 and files this Memorandum in Opposition to the Defendants' Motion to Dismiss.

I.    **Statement of the Case**

This civil rights action arises from an arrest of the Plaintiff that arose when she was pursued, apprehended, handcuffed, questioned, forced to take a breath test, and then ultimately released with a citation alleging that she violated Alabama Statutes by failing to obey

a police officer. The Plaintiff was found not guilty of this offense on November 14th, 2006.

This incident arose from an unconstitutional roadblock that was being conducted on the night of the Plaintiff's arrest. The Plaintiff observed blue lights and believing that there was an accident in front of her chose another route home. The existence of a police roadblock was not advertised in a manner that would give notice to a reasonable person. The Defendants then pursued the Plaintiff at a high rate of speed and arrested her in the parking lot of a shopping center after she had disembarked from her vehicle.

## II.    Failure to state a claim – sufficiency of the pleadings

The Defendants in their Motion to Dismiss initially discussed the standards that the Court should employ in disposing of a Motion to Dismiss. The United States Supreme Court has decided two cases in 2007 that are directly related to the Defendants' assertions concerning the sufficiency of the complaint filed in this cause of action.

The United States Supreme Court in *Bell Atlantic Corp., et.al. v. Twombly, et.al.*, 127 S.Ct. 1955 (2007), an antitrust case, restated the considerations that a reviewing court should employ in disposing of a

Motion to Dismiss pursuant to *Fed.R.Civ.Pro.Rule 12(b)(6)*. The Court held:

> Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true. *id*. at pg. 1959.

The Court's decision went on to hold that a complaint should contain enough factual matter to support the cause of action to a "plausibility" level but did not have to rise to a "probability" level. The Court clearly stated:

> Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects Rule 8(a)(2)'s threshold requirement that the "plain statement" possess enough heft to "sho[w] that the pleader is entitled to relief." *id*. pg. 1959.

The complaint filed in this cause of action is fact intensive in both the initial recitation of facts but also in linking those facts to each of the factual allegations contained in the various counts. The complaint goes far beyond the requirements of Rule 8(a)(2), Fed.R.Civ.Pro.

Shortly after *Bell Atlantic, supra*, the United States Supreme Court decided *Erickson v. Pardus*, 127 S.Ct. 2197 (2007). The *Erickson* decision that immediately followed *Bell Atlantic, supra*,

appears to clearly indicate that pleading requirements in § 1983 cases are simply notice pleading. The *Erickson* case dealt with a 42 U.S.C. § 1983 complaint filed by a prisoner against prison officials. The Court stated:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." **Specific facts are not necessary**; the statement need only " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007) (quoting *Conley v. Gibson,* 78 S.Ct. 99 (1957)). pg. 2200. (emphasis added)

The Court noted that the lower court had departed from the liberal pleading standards set forth in <u>Rule 8(a)(2)</u> and that the error was more pronounced because of the *Pro Se* status of the petitioner.

The United States Supreme Court had previously struck down a heightened pleading requirement on suit against municipalities, *Leatherman v. Tarrant County Narcotics Intelligence Coordination Unit*, 113 S.Ct. 1160 (1993), *accord, Swann v. Southern Health Partners, Inc.*, 388 F.3d 834 (11th Cir. 2004). The court held:

> Second, it is not possible to square the heightened standard applied in this case with the liberal system of "notice pleading" set up by the Federal Rules. <u>Rule 8(a)(2)</u> requires that a complaint include only "a short and plain statement of the claim showing that the pleader is entitled to relief." at pg. 1161.,

Although the *Leatherman* case dealt with a municipal defendant, when this case is contrasted with *Erickson, supra*, there is clearly no heightened pleading standard for § 1983 complaints.

Following the two decisions of the United States Supreme Court, the Northern District of Georgia in *CBT Flint Partners, LLC v. Goodmail Systems*, Inc., 529 F.Supp. 1376 (N.D. Ga. 2007). The Defendants had moved to dismiss arguing that *Bell Atlantic, supra*, had altered the pleading requirements for antitrust and thus should be extended to cases involving patent disputes. The District Judge stated:

> In my view, *Twombly*, did not radically alter the elementary rules of civil procedure that have governed litigation in the federal courts for the past seventy years. The Court's forced retirement of *Conley v. Gibson's* "no set of facts" language does not change the fundamental command of <u>Rule 8</u> as to what a valid complaint must look like. Indeed, the Court made clear that it was not imposing a heightened pleading standard. *Twombly*, 127 S.Ct. at 1974 (We do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.") *id*. at pg. 1379.

The District Court noted that *Twombly* was a specific response to a specific area of law, i.e. Antitrust, and was not a "broad based new license for federal courts to ramp up pleading requirements," *id*. at pg. 1379.

5

The Eleventh Circuit Court of Appeal in *Washington v. Dept. of Children and Families*, 256 Fed.Appx. 326 (11th Cir. 2007) held in a civil rights case:

> Because of the liberal pleading requirements of the Federal Rules, rarely will a motion to dismiss for failure to state a claim be granted. *Quality Foods de Centro America, S.A. v. Latin American Agribusiness,* 711 F.2d 989, 996 (11th Cir.1983). A pleading should contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). at pg. 327.

The Eleventh Circuit Court of Appeal just recently reasserted in *McCray v. Potter*, 2008 WL 142032 (11th Cir. 2008) the standard that must be met on a Motion to Dismiss:

> In discussing a Rule 12(b)(6) motion to dismiss, we have held many times that "the pleadings are construed broadly," *e.g., Levine v. World Fin. Network Nat'l Bank,* 437 F.3d 1118, 1120 (11th Cir.2006), and that the allegations in the complaint are viewed in the light most favorable to the plaintiff,[FN4] *e.g., Chepstow Ltd.,* 381 F.3d at 1080. at pg. 1., *accord, Rivell v. Private Health Care Systems, Inc.,* 520 F.3d 1308 (11th Cir. 2008).

The authority cited by the Defendants' in their memorandum all pre-date the *Erickson, supra,* decision by the United States Supreme Court and must be read in light of that decision.

The Federal Rules of Civil Procedure requires a "Notice Pleading" standard on Plaintiffs asserting a claim. The complaint filed in this

cause of action meets that standard and gives the Defendants' fair notice of what the Plaintiff's claims encompass.

### III.    Qualified Immunity

The Defendants' are asserting that they are entitled to "qualified immunity" based upon the law not being clearly established at the time of the incident.

The United States Supreme Court in *Michigan Dept. of State Police v. Sitz*, 110 S.Ct. 2481 (1990) dealt with the constitutional requirements for conducting a roadblock that was intended to deal with highway safety concerns and specifically emphasized that "guidelines governing checkpoint operation minimize discretion of the officers on the scene".

The complaint outlines that the roadblock being conducted by the Defendants was conducted at night without traffic cones, warning signs or a written operational plan.

*Sitz, id.* clearly holds that for such a roadblock to be reasonable under the Fourth Amendment there must be a neutral and objective written plan that eliminates discretion on the part of the participating officers on who will be stopped.  The Court noted that the Petitioners had:

………… appointed a Sobriety Checkpoint Advisory Committee comprising representatives of the State Police force, local police forces, state prosecutors, and the University of Michigan Transportation Research Institute. Pursuant to its charge, the advisory committee **created guidelines setting forth procedures governing checkpoint operations, site selection, and publicity**, at pg. 2484. (emphasis added)

The court went on to note that their opinion was limited to the facts presented:

It is important to recognize what our inquiry is *not* about. No allegations are before us of unreasonable treatment of any person after an actual detention at a particular checkpoint. See *Martinez-Fuerte,* 428 U.S., at 559, 96 S.Ct., at 3083 ("[C]laim that a particular exercise of discretion in locating or operating a checkpoint is unreasonable is subject to post-stop judicial review"), at pg. 2485.

*Sitz, id*., is relevant to this case in that the case sets out the requirements that the Defendants should have met prior to conducting a roadblock that led to the arrest of the Plaintiff.

The Alabama Supreme Court in *Ex parte Hayden Jerome Jackson*, 886 So.2d 155 (Ala. 2004) dealt with roadblock requirements in light of existing precedent. The court citing to *Brown v. Texas*, 99 S.Ct. 2637 (1979) stated:

"The nature of a roadblock requires the stopping of cars without individualized suspicion of wrongdoing. Thus, *if a roadblock stop is to be upheld, it must be on the second basis, i.e., because it is 'carried out pursuant to a plan*

*embodying explicit, neutral limitations on the conduct of individual officers.*' In a series of decisions stemming from the immigration control cases, the United States Supreme Court has rejected the individualized suspicion requirement for fixed, non-random automobile checkpoints or roadblock stops, and instead has established some criteria for 'a plan embodying explicit, neutral limitations on the conduct of individual officers.' at pg. 162.

The court then cited with favor a Kansas Supreme Court decision that outlined thirteen factors to consider when evaluating whether a roadblock met constitutional muster:

> The Court of Criminal Appeals then quoted a 13-factor analysis adopted by the Kansas Supreme Court:
> " '(1) The degree of discretion, if any, left to the officer in the field; (2) the location designated for the roadblock; (3) the time and duration of the roadblock; (4) standards set by superior officers; (5) advance notice to the public at large; (6) advance warning to the individual approaching motorist; (7) maintenance of safety conditions; (8) degree of fear or anxiety generated by the mode of operation; (9) average length of time each motorist is detained; (10) physical factors surrounding the location, type and method of operation; (11) the availability of less intrusive methods for combating the problem; (12) the degree of effectiveness of the procedure; and (13) any other relevant circumstances which might bear upon the test.' "
> 555 So.2d at 296 (quoting *State v. Deskins, 234 Kan. 529, 541, 673 P.2d 1174, 1185 (1983)*). We agree with the Court of Criminal Appeals that we should not exalt form over substance and that some of the 13 factors outlined above are *not* pivotal to determining whether a particular roadblock-type stop is "minimally intrusive." **However, those factors are helpful considerations to take into account when determining whether the officers conducted the stop pursuant to an "objective**

**standard**." at Pg. 63. (Emphasis added)

The Plaintiff's complaint alleges that none of these factors were incorporated into a written plan or policy and that in fact, there was no written plan or policy to govern the conduct of the participating officers, *see, People v. Bigger*, 771 N.Y.S.2d 826 (N.Y. Just.Ct. 2004).

The Eleventh Circuit Court of Appeals dealt with the constitutionality of roadblocks in *Merrett v. Moore*, 58 F.3d 1547 (11th Cir. 1995) and noted that even with a written operations plan that the conduct of a roadblock could result in constitutional violations. In the *Merrett* case, the officers had set up traffic control devices including cones, warning signs, and flashing lights to warn approaching motorists of the roadblock. None of these safeguards were present the night the Plaintiff was arrested. The court in its opinion warned that government officials faced the possibility for constitutional violations if a constitutionally sufficient operational plan was not adhered to by the participating officers. Thus the requirements of written, objective guidelines for the conduct and operation of a roadblock has been clearly established for a number of years.

The National Highway and Transportation Safety Administration (NHTSA) has published written guidelines for law enforcement administrators to use when formulating policy and written plans for the operation of a roadblock. The Supreme Court of Hawaii in *State v. Heapy*, 151 P.3d 764 (Haw. 2007) made reference to the guidelines and noted:

> In the Guide, the NHTSA acknowledged the contributions of individuals from the:
>
> Dayton Police Department, Dayton, Ohio; ... Franklin County Sheriff's Department, Columbus, Ohio; ... Indiana State Police; Maryland State Police; ... Metropolitan Police Department, Washington, D.C.; ... Michigan State Police; ... New York State Police; ... Palm Beach County Sheriff's Department, West Palm Beach, Florida; ... Redding Police Department, Redding, California[;] the International Association of Chiefs of Police (IACP) and the National Sheriffs' Association.
>
> (by setting forth) operational procedures that police administrators may want to consider in order to ensure that sobriety checkpoints are used legally, effectively and safely. These points are consistent with those specified in recent court decisions, including the United States Supreme Court ruling in ...*Sitz,* upholding the constitutionality of sobriety checkpoints, *id*. at pg. 783.

Law enforcement agencies from across the United States including two national associations representing police agencies had developed all of the material required to promulgate written policy and

this resource had been available since 1990.  The NHTSA guide

specifically recommends:

> [a] motorist who wishes to avoid the checkpoint by legally
> turning before entering the checkpoint area should be
> allowed to do so unless a traffic violation(s) is observed or
> probable cause exists to take other action. *The act of
> avoiding a sobriety checkpoint does not constitute
> grounds for a stop.*

*Heapy,* also noted:

> Any exposition of the case law in our jurisdiction and from
> other jurisdictions would be incomplete and misleading
> without a contextual reference to the roadblock statutes
> **and the Guide**, which have their genesis in the
> constitutional text prohibiting unreasonable seizures, *id*.
> pg. 784. (Emphasis added)

The NHTSA guide has been judicially approved in many states and

was available at the time the Plaintiff was arrested.

Whether the law is clearly established for qualified immunity

purposes depends upon the existing precedent from the United

States Supreme Court, the Eleventh Circuit Court of Appeals and the

highest court of the state in which the incident occurs, see *Snider v.

Jefferson State Community College*, 344 F.3d 1325, 1329 (11th Cir.

2003).  In this case, the law has been clearly established as to what

the constitutional requirements are for a roadblock in all three forums

and thus qualified immunity at the pleading stage is not appropriate.

All of the facts relating to the arrest of the Plaintiff flowed from the conduct of the roadblock being operated by the Defendants and thus is directly related to the constitutional claims being asserted by the Plaintiff. The vast majority of the authority cited by the Defendants in their memorandum relates to the ability of an officer to make an investigatory stop when a motorist attempts to avoid a roadblock. The Plaintiff's complaint alleges that she did not know that there was a roadblock and simply turned around without violating any traffic regulations and proceed to leave the area at a lawful speed. The authority previously cited above clearly establishes that the roadblock must be constitutionally sound in its plan and operation before an officer may make a stop of a motorist who does not wish to go through the roadblock.

IV.    **Was there an investigatory stop?**

The Plaintiff was found "not guilty" of the traffic offense for which she was arrested after she turned around to avoid what she believed to be a traffic accident. If the Defendants had created a written plan or policy that took into account the *Jackson, supra*, factors announced by the Alabama Supreme Court, this incident would never have occurred. Most of the argument advanced in the

Defendants' memorandum is in the nature of a motion for summary judgment and is not appropriate at the initial pleading and answer stage of the proceedings.  The Plaintiff's complaint alleges that she was arrested and in factual support of that claim alleges that she was forcibly handcuffed, removed from the area of her vehicle and detained while being required to take a breath test.  These allegations alone, if proven, show that there was no investigatory stop.

There is no prohibition against a citizen avoiding what they believe to be a traffic accident based upon flashing blue lights on the top of marked units.  Furthermore, the presence of a uniformed officer in the middle of a street does not prohibit a citizen from avoiding whatever event that has led to the officer being in the street.  The Supreme Court of Hawaii in *Heapy*, *supra*, held in a roadblock situation:

> Viewed in its best light, then, the only suspicion Officer Correa had was that Defendant was attempting to avoid a roadblock, not that he was driving under the influence of an intoxicant. The mere possibility of criminal activity does *not* satisfy the constitutional requirement that a stop be based on suspicion "that criminal activity was afoot," …………..In sum then, Officer Correa did not observe Defendant driving in a suspicious manner or commit any criminal or traffic violation in the operation of his vehicle. Defendant made a legal right turn onto a paved roadway. Apparently the turn was not made erratically, and his headlights were on. Furthermore, even as Officer Correa

14

> followed Defendant, he did not observe Defendant driving suspiciously or in an erratic manner. Accordingly, Officer Correa had no basis to have a reasonable suspicion that criminal activity was afoot, at pg. 292-3.

The *Heapy, id*. court decided this case on state constitutional grounds but the outcome would be the same if decided on federal constitutional grounds. In fact the court noted:

> Indeed the majority of other jurisdictions have held, based on the facts presented, that it is not permissible to pursue and detain drivers of motor vehicles appearing to legally avoid sobriety checkpoints. at pg. 293.

*See also, Howard v. Voshell*, 621 A.2d 804 (Del. Sup.Ct. 1992); *Commonwealth v. Scavello*, 734 A.2d 386 (Pen. 1999); *State v. McCleery*, 560 N.W.2d 789 (Neb. 1997).

However the Plaintiff at the pleading stage is only required to give fair notice on what claims are being asserted so as to allow the Defendants to draft an answer. The complaint meets that threshold requirement.

## V.    **Excessive use of force claims**

The Plaintiff has asserted a claim of excessive force and the Defendants' memorandum reflects that they clearly understand the nature of the claim.

The Eleventh Circuit in *Sheth v. Williams*, 145 F.3d 1231 (11th

Cir. 1998) dealt with a similar factual situation:

> The district court was likewise correct in holding that
> Webster was not entitled to qualified immunity on
> plaintiff's excessive force claim. Under plaintiff's
> allegations, Webster pushed her against a soda machine,
> handcuffed her, and dragged her to the police car. There
> is no evidence in the record to suggest that plaintiff posed
> a danger to the officer or others. Accordingly, because of
> the absence of any justification for Webster's use of force,
> application of the Fourth Amendment reasonableness
> standard "would inevitably lead every reasonable officer
> ... to conclude that the force was unlawful." *Post v. City of
> Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir.1993). *See
> also Thornton v. City of Macon, supra,* at pg. 1238.

The *Sheth, id*. case arose from a set of circumstances in which the

officer was found to not possess probable cause for an arrest.  As in

the case at hand if the Plaintiff was unaware that she was required to

stop for a police roadblock, then there would not be probable cause

for her arrest for failing to obey a police officer.

The Eleventh Circuit in *Thornton v. City of Macon*, 132 F.3d

1395 (11th Cir. 1998) had previously held:

> It is clearly established that the use of excessive force in
> carrying out an arrest constitutes a violation of the Fourth
> Amendment. *See Graham v. Connor*, 490 U.S. 386, 394,
> 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989); *see also
> Cottrell,* 85 F.3d at 1492. Whether the force used is
> reasonable turns on "the facts and circumstances of each
> particular case, including the severity of the crime at
> issue, whether the suspect poses an immediate threat to

16

the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, 109 S.Ct. at 1872, at pg. 1400.

The Eleventh Circuit again dealt with an excessive force issue in *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002) which involved the arrest of a motorist on a traffic allegation. The court stated:

> First, although *Atwater* compels the decision that Ferraro did have probable cause to arrest Lee, at least on this fact pattern, it is difficult to imagine a less significant crime than honking one's horn on a busy downtown thoroughfare. Since *Graham* establishes generally that more force is appropriate for a more serious offense and less force is appropriate for a less serious one, this factor strongly weighs in favor of Lee. The second *Graham* factor also works in Lee's favor, as there is absolutely no evidence indicating that Lee posed any threat to the arresting officer or to anyone else. Similarly, when the facts are construed in the light most favorable to the plaintiff, there is no indication that Lee actively resisted or attempted to flee. *id*. at pg. 1198.

The Plaintiff who at the time of this incident was a juvenile, alleges that she was outside of her vehicle when the Defendant McGowin arrived at a high rate of speed, exited his patrol car, ran at the Plaintiff while screaming at her, grabbed her by the neck, forcibly turned her around, threw her against her vehicle and handcuffed her. The Plaintiff did not resist the officer, was crying uncontrollably, and

asking the officer what she had done.  The Defendant McGowin was investigating what he believed to be a traffic infraction.  McGowin was clearly able to see that the Plaintiff was outside her vehicle, in fear, and was not moving.  This course of conduct by McGowin in dealing with a minor infraction involving a juvenile, if proven, is substantially more severe than any of the factual circumstances in the case authority cited by the Defendants.

If the arrest of the Plaintiff was illegal then any force applied would be unconstitutional and the Defendants would not be entitled to qualified immunity, *see, Jackson v. Sauls*, 206 F.3d 1156 (11th Cir. 2003).

The issue at this stage is whether the Plaintiff has provided sufficient notice to the Defendants of her claim in the complaint.  The complaint is clear on what the underlying factual basis is of the Plaintiff's claim and on this basis alone the motion to dismiss on these grounds should be denied.

VI. **Municipal Liability**

The Plaintiff has alleged in her complaint that the Andalusia Police Department was conducting roadblocks without written plans or policies that conformed to constitutional requirements that had

been previously announced by the United States Supreme Court, the Eleventh Circuit Court of Appeals and the Alabama Supreme Court.

Municipal liability may be imposed not only when the challenged conduct occurs pursuant to a formally adopted policy but also when the practices of the government entity are well settled and thus constitutes a "custom or usage" with the force of law, *Monell v. Dept. of Social Services*, 98 S.Ct. 2018 (1978). Custom and usage will be attributed to a government body when the duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the policymaker that the practices have become customary among its employees, *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987), *see also, Denno v. School Board of Volusia County*, 218 F.3d 1267, 1278 (11th Cir. 2000).

The United States Supreme Court in *Pembaur v. City of Cincinnati*, 106 S.Ct. 1292 (1986) in clarifying *Monell* held that:

> With this understanding, it is plain that municipal liability **may be imposed for a single decision** by municipal policymakers under appropriate circumstances. If the decision to adopt a particular course of action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly. pg. 470 (emphasis added)

On this basis alone, the complaint should be determine to be sufficient to place the Police Department on notice of the nature of the Plaintiff's constitutional claims.

The Plaintiff's complaint alleges that roadblocks were being conducted without policy or written plans and those failures on the part of the police department led to her constitutional rights being violated.

Applying the *Leatherman, supra,* standards then, the Plaintiff's complaint provides sufficient notice to the Defendants of the claims being asserted to require an answer and participation in discovery.

VII. **Supervisory Liability**

The Defendant Patterson has alleged the controlling Eleventh Circuit precedent governing when supervisors are liable under Section 1983, *Cottone v. Jenne*, 326 F.3d 1352 (11th Cir. 2003). The Plaintiff's complaint alleges that Patterson was a direct participant in the actions that led to her arrest.    The *Cottone, id.* court held:

> Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct **or** when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Gonzalez,* 325 F.3d 1228 (11th Cir. 2003); *Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir.1990). at pg. 1360. (Emphasis added)

20

The allegations of Plaintiff's complaint meet both threshold requirements in that Patterson directly participated and failed to supervise and protect the Plaintiff from the constitutional violations being inflicted upon her by officers under his command.

WHEREFORE, the Plaintiff moves this Honorable Court to deny the Defendant's  Motion to Dismiss.

Done this 9th day of May, 2008 in Crestview, Okaloosa County, Florida.

JAMES R. MURRAY, P.A.

/s/ James R. Murray_____
James R. Murray, Esq.
Co-Counsel for Plaintiff
Florida Bar No: 0299162
420 E. Pine Avenue
Crestview, FL 32536
(850) 682-6165; FAX 682-8343

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 9th, 2008, I electronically filed

this document by using the CM/ECF system, which will send a notice

of electronic filing to all Counsel of record in this cause of action.


_____/s/James R. Murray_____
James R. Murray