IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **ABBEY MARIE JOHNSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 2:08-cv-157 |
| ) | |
| **ANDALUSIA POLICE** ) | |
| **DEPARTMENT, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**REPLY TO PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Defendants the City of Andalusia (incorrectly identified as the "Andalusia Police Department"), Capt. Rusty Patterson, Officer Steven McGowin, and Officer Darren Raines submit this reply to the plaintiff's memorandum in opposition to their motion to dismiss.

**I.  THE HEIGHTENED PLEADING STANDARD**

The plaintiff's attack on the heightened pleading standard is misplaced. The plaintiff cited Erickson v. Pardus, 127 S. Ct. 2197 (2007), for her proposition that the heightened pleading standard no longer applies to § 1983 actions. However, there is no mention of a qualified immunity defense in Erickson.

In Leatherman v. Tarrant County Narcotics Intelligence Coordination Unit, 113 S. Ct. 1160 (1993), the Supreme Court limited its abrogation of the heightened pleading standard to claims against municipalities. The Court held, "We thus have no occasion to consider whether our qualified immunity

1

jurisprudence would require a heightened pleading in cases involving government officials." Id. at 166-67.

"Qualified or 'good faith' immunity is an affirmative defense that must be pleaded by a defendant official." Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). There is no indication that the government officials in Erickson invoked the qualified immunity defense in their motion to dismiss.

The opinion in Erickson does not address the application of the heightened pleading standard to a qualified immunity defense. It does not hold that the heightened pleading standard no longer applies in the context of qualified immunity.

"The heightened pleading requirement is the law of this circuit." GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1368 (11th Cir. 1998).

In any event, the primary deficiency with the plaintiff's complaint is not a lack of clarity of the factual allegations. The complaint is primarily deficient because, even assuming its alleged facts are true, it does not show a constitutional violation.

## II. THE PLAINTIFF'S BURDEN

The plaintiff's response misstates her burden to overcome a motion to dismiss that invokes the qualified immunity defense.

On page 15, the plaintiff asserts, "the Plaintiff at the pleading stage is only required to give fair notice on what claims are being asserted so as to allow the Defendants to draft an answer." (Doc. 16 at 15.)

On page 18, she asserts, "The issue at this stage is whether the Plaintiff has provided sufficient notice to the Defendants of her claim in the complaint." (Doc. 16 at 18.)

These are incorrect statements of the plaintiff's burden. This motion to dismiss raises qualified immunity as a defense.

"When qualified immunity is asserted in the context of a motion to dismiss, we look to the pleadings to see if the plaintiff has successfully alleged the violation of a clearly established right." O'Rourke v. Hayes, 378 F.3d 1201, 1206 (11th Cir. 2004). "The burden of showing that an officer violated clearly established law falls on the plaintiff, and a plaintiff's citation of general rules or abstract rights is insufficient to strip a § 1983 defendant of his qualified immunity." Jackson v. Sauls, 206 F.3d 1156, 1165 (11th Cir. 2000). The plaintiff has not carried her burden.

### III. THE INITIAL SEIZURE CLAIM

The plaintiff has not identified any decision of the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, or the Alabama Supreme Court which holds that a law enforcement officer violates the Fourth Amendment by stopping a motorist who turns around and drives away from a police roadblock at 10:00 P.M. on a Saturday night.

Instead, the plaintiff circumvents this core issue by devoting much of her argument to the legality of the roadblock itself.[1]  Her approach misses the mark.

### A.  *Plaintiff Was Not Seized at the Roadblock*

Under her version of the facts, the plaintiff did not stop at the roadblock. (See Compl. at 6, ¶¶ 22-23.)  Therefore, she was not seized there.  See Brendlin v. California, 127 S. Ct. 2400, 2405 (2007) ("there is no seizure without actual submission"); County of Sacramento v. Lewis, 523 U.S. 833, 845 n.7 (1998) ("Attempted seizures of a person are beyond the scope of the Fourth Amendment."); California v. Hodari D., 499 U.S. 621, 626 (1991) ("The narrow question before us is whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the suspect does not yield.  We hold that it does not.").

The core issue is whether, as of August 26, 2006, a law enforcement officer violated clearly established law when he stopped a motorist after she turned around and drove away from a police roadblock at 10:00 P.M. on a Saturday night.

---

[1]  The plaintiff's response asserts that any roadblock must be conducted in accordance with a *written* plan.  On page 7 she writes, "*Sitz, id.* clearly holds that for such a roadblock to be reasonable under the Fourth Amendment there must be a neutral and objective *written* plan… ."  (Doc. 16 at 7.)  On page 10 she writes, "Thus the requirements of *written*, objective guidelines for the conduct and operation of a roadblock has been clearly established for a number of years."  (Doc. 16 at 10.)  The plaintiff does not provide pinpoint citations for her assertions.

Defense counsel has re-read Michigan Department of State Police v. Sitz, 496 U.S. 444 (1990), Brown v. Texas, 443 U.S. 47 (1979), Delaware v. Prouse, 440 U.S. 648 (1979), United States v. Martinez-Fuerte, 428 U.S. 543 (1976), and Ex parte Jackson, 886 So. 2d 155 (Ala. 2004).  None of these decisions requires a *written* plan.

In fact, the plaintiff has not cited any decision from the United States Supreme Court, the United States Court of Appeals from the Eleventh Circuit, or the Alabama Supreme Court that holds the plan must be committed to writing.

4

### B. *The Plaintiff Does Not Identify Clearly Established Law*

####    1. *The <u>Heapy</u> Decision*

To survive a motion to dismiss, the plaintiff must identify a violation of clearly established law. She primarily relies upon the Hawaii Supreme Court's opinion in <u>State v. Heapy</u>, 151 P.3d 764 (Haw. 2007). <u>Heapy</u> falls short for three reasons.

First, the Hawaii Supreme Court cannot clearly establish the law of this circuit. See <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1197 n.5 (11th Cir. 2002) ("In this circuit, the law can be clearly established for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose.").

Second, the majority of the justices that decided <u>Heapy</u> agreed only that the traffic stop violated Hawaii's state constitution. See <u>Heapy</u> 151 P.3d at 774, 786. <u>Heapy</u> is not a Fourth Amendment decision.

Third, the <u>Heapy</u> opinion was not released until January 11, 2007 – almost five months *after* the incident made the basis of this lawsuit. <u>Heapy</u> could not have given the Andalusia officers fair notice that their conduct was unlawful on August 26, 2006. See <u>Marsh v. Butler County</u>, 268 F.3d 1014, 1031 (11th Cir. 2001) ("Fair and clear notice to government officials is the cornerstone of qualified immunity.").

"Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that

5

the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." Brosseau v. Haugen, 125. S. Ct. 596, 599 (2004). "Officials performing discretionary functions are not subject to suit when such questions are resolved against them only after they have acted." Mitchell v. Forsyth, 472 U.S. 511, 535 (1985).

The plaintiff's invocation of Heapy will not defeat the qualified immunity defense.

### 2. *The Plaintiff's Other Cases*

Without elaboration, the plaintiff also cites Howard v. Voshell, 621 A.2d 804 (Del. Sup. Ct. 1992), Commonwealth v. Scavello, 734 A.2d 386 (Pa. 1999), and State v. McCleery, 560 N.W.2d 789 (Neb. 1997). (See Doc. 16 at 15.)

Howard was decided by a Delaware Superior Court judge, which is a trial court judge. See Howard, 621 A.2d at 804. It is not an appellate decision.

Scavello appears to have been decided on the basis of a Pennsylvania statute. See Scavello, 734 A.2d at 432-433. It does not invoke the Fourth Amendment.

McCleery was decided based upon the law enforcement agency's voluntary decision to follow a non-binding Department of Transportation policy. See McCleery, 560 N.W.2d at 947 ("Under certain circumstances, the avoidance of a checkpoint might create a reasonable suspicion that would justify a Terry stop. However, since the State has admitted that the officer who initially stopped McCleery would testify that the checkpoint was conducted in total compliance with the Department of Transportation policy which states that avoidance of a

6

checkpoint is not grounds for a stop, we cannot conclude that the officers had a reasonable suspicion in this case.").

In any event, these foreign state court opinions cannot clearly establish the law of this circuit. See Lee v. Ferraro, 284 F.3d 1188, 1197 n.5 (11th Cir. 2002) ("In this circuit, the law can be clearly established for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose.").

### C. *Public Policy*

This case raises an important issue for law enforcement. Approximately 17,000 people are killed each year by intoxicated drivers. See National Highway Traffic Safety Administration, Fatality Analysis Reporting System, http://www-fars.nhtsa.dot.gov/Trends/TrendsAlcohol.aspx.

"No one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it." Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 451 (1990).

Eight appellate court decisions have declared an investigatory stop to be justified when a motorist avoids a police roadblock. See Smith v. State, 515 So. 2d 149 (Ala. Crim. App. 1987); Coffman v. State, 759 S.W.2d 573, 575-576 (Ark. Ct. App. 1988); Snyder v. State, 538 N.E.2d 961 (Ind. Ct. App. 1989); Steinbeck v. Commonwealth, 862 S.W.2d 912 (Ky. Ct. App. 1993); State v. D'Angelo, 605 A.2d 68 (Me.1992); Oughton v. Director of Revenue, 916 S.W.2d 462 (Mo. Ct. App. 1996); State v. Thill, 474 N.W.2d 86 (S.D. 1991); Boches v. State, 506 So. 2d 254 (Miss. 1987). This Court should not depart from the majority rule.

To hold that a police officer cannot lawfully make an investigatory stop of a motorist that avoids a police roadblock would tie the hands of law enforcement. At the end of the day, common sense must prevail:

> Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. Headlong flight-wherever it occurs-is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such. In reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists. Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior.

Illinois v. Wardlow, 528 U.S. 119, 124-25 (2000).

The defendants urge the Court not to hold that an officer may not lawfully make an investigatory stop of a motorist that turns around in front of a police roadblock and drives away.

### D. *Qualified Immunity*

Even if the Court ultimately resolves the constitutional issue against the officers, qualified immunity still applies. See Wilson v. Layne, 526 U.S. 603, 618 (1999) ("If judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy.").

"Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." Brosseau v. Haugen, 125 S. Ct. 596, 599 (2004).

"When an officer asserts qualified immunity, the issue is not whether reasonable suspicion existed in fact, but whether the officer had 'arguable' reasonable suspicion to support an investigatory stop."  Jackson v. Sauls, 206 F.3d 1156, 1166 (11th Cir. 2000).

"A law enforcement official who reasonably but mistakenly concludes that reasonable suspicion is present is still entitled to qualified immunity."  Jackson v. Sauls, 206 F.3d 1156, 1165-66 (11th Cir. 2000).

The plaintiff has not met her burden to show that on August 26, 2006, the law was clearly established in the Eleventh Circuit that a police officer could not stop a motorist who turned around and drove away from a police roadblock at 10:00 P.M. on a Saturday night.[2]  Officer McGowin's investigatory stop of the plaintiff did not violate clearly established law.

Captain Patterson, Officer McGowin, and Officer Raines are entitled to qualified immunity against the Fourth Amendment seizure claim.  See Baker v. McCollan, 443 U.S. 137, 146-47 (1979) ("Having been deprived of no rights secured under the United States Constitution, respondent had no claim cognizable under § 1983.").

---

[2] In her response, the plaintiff repeatedly emphasizes her own state of mind: "she did not know there was a roadblock," (page 13), "she turned around to avoid what she believed to be a traffic accident," (page 13), "There is no prohibition against a citizen avoiding what they believe to be a traffic accident," (page 14), and "if the Plaintiff was unaware that she was required to stop for a police roadblock, then there would not be probable cause to arrest her," (page 16).
  Under the Fourth Amendment's objective reasonableness standard, however, the plaintiff's state of mind is immaterial.  See Garrett v. Athens-Clarke County, 378 F.3d 1274, 1281 (11th Cir. 2004) ("We must look at the situation not with hindsight, but with the eye of the objectively reasonable officer on the scene."); McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1239 n.2 & n.3, 1241 n.8, 1246 (11th Cir. 2003) (holding plaintiff's subjective intent immaterial to Fourth Amendment analysis).

## IV. THE USE OF FORCE CLAIM

Captain Patterson, Officer McGowin, and Officer Raines are also entitled to qualified immunity against the plaintiff's use of force claim.

Again, the plaintiff has the burden to demonstrate a violation of clearly established law. See Harris v. Coweta County, 406 F.3d 1307, 1312-23 (11th Cir. 2005) ("The defendants having established their eligibility for qualified immunity, the burden then shifts to the plaintiff to show that qualified immunity is not appropriate."). The plaintiff has not carried her burden.

### A. *The Plaintiff's Cases*

In response to the qualified immunity defense, the plaintiff cites Sheth v. Webster, 145 F.3d 1231 (11th Cir. 1998), Thornton v. City of Macon, 132 F.3d 1395 (11th Cir. 1998), and Lee v. Ferraro, 284 F.3d 1188 (11th Cir. 2002). (See Doc. 16 at 16-17.)

Sheth and Thornton involved civil disputes during which police officers became angry and physically assaulted citizens over non-criminal matters. See Sheth, 145 F.3d at 1234 (dispute over refund for motel room); Thornton, 132 F.3d at 1398 (dispute over return of mattress). There was no suspicion of criminal activity in either case.

Sheth and Thornton are not factually similar. "[W]here the applicable legal standard is a highly general one, such as 'reasonableness,' preexisting case law that has applied general law to specific circumstances will almost always be necessary to draw a line that is capable of giving fair and clear notice that an

10

official's conduct will violate federal law." Thomas v. Roberts, 323 F.3d 950, 954 (11th Cir. 2003).

"For the law to be 'clearly established,' case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." Priester v. City of Riviera Beach, 208 F.3d 919, 926 (11th Cir. 2000).

The plaintiff also cites Lee v. Ferraro, 284 F.3d 1188 (11th Cir. 2002). Lee actually militates in favor of qualified immunity for this case.

In Lee, a Miami-Dade police officer stopped a motorist after she honked her horn illegally in traffic. Lee, 284 F.3d at 1190. After the motorist pulled over, the officer suddenly grabbed her wrist, pulled her out of her car, pulled her hand behind her back, and shoved her against her car. Lee, 284 F.3d at 1191. The officer then frisked the motorist and handcuffed her. Id.

In denying qualified immunity to the officer, the Eleventh Circuit did *not* criticize any of these actions. Rather, the Eleventh Circuit denied qualified only because the officer also slammed the motorist's head onto the trunk of her car *after* she was handcuffed. The Eleventh Circuit's holding was limited to the force used *after* the handcuffs were applied.

The Eleventh Circuit acknowledged that, "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of

physical coercion or threat thereof to effect it." Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002) (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).

The Eleventh Circuit wrote, "Even though Ferraro had lawful authority to effect a custodial arrest and to use a reasonable amount of force to subdue and secure Lee, *we can discern no reason, let alone any legitimate law enforcement need, for Officer Ferraro to have led Lee to the back of her car and slammed her head against the trunk* <u>after</u> *she was arrested and secured in handcuffs.*" Lee, 284 F.3d at 1198 (emphasis added).  The Eleventh Circuit concluded, "the force used by Ferraro *after* effecting Lee's arrest was unnecessary and disproportionate." Lee, 284 F.3d at 1198.

Nowhere in its opinion did the Eleventh Circuit fault Officer Ferraro for the force he used *before* he secured Lee in handcuffs.

In this case, there is no allegation that Capt. Patterson, Officer McGowin, or Officer Raines used any force against the plaintiff *after* she was handcuffed. (See Compl. at 8, ¶ 31.)  Under Lee, Capt. Patterson, Officer McGowin, and Officer Raines are still entitled to qualified immunity.

### B. *Applicable Law*

It is beyond question that a police officer may use physical force to effect an investigatory stop. See Graham v. Connor, 490 U.S. 386, 396 (1989) ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."); Jackson v. Sauls, 206 F.3d 1156, 1171-72 (11th Cir. 2000) ("The right to make an investigatory stop

carries with it the right to use some degree of physical coercion or threat thereof to effect it.").

It is equally true that, "The application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000).

In Jones v. City of Dothan, 121 F.3d 1456, 1458 (11th Cir. 1997), the United States Court of Appeals for the Eleventh Circuit upheld the use of physical force to effect an investigatory stop. In Jones, the officers slammed Mr. Jones against a wall and kicked his legs apart, but did not arrest him. Id. at 1458-59. Mr. Jones required medical treatment, and his clothing was torn. Id. at 1458, 1460. There was no indication that Mr. Jones offered any resistance. However, the Eleventh Circuit held the officers did not violate clearly established law and, thus, were entitled to qualified immunity. Id. at 1460-61.

The Eleventh Circuit held similar uses of force were *de minimis* in Durruthy v. Pastor, 351 F.3d 1080 (11th Cir. 2003) (kneed in back), Rodriguez v. Farrell, 280 F.3d 1341, 1352 (11th Cir. 2002) (painful handcuffing), Nolin v. Isbell, 207 F.3d 1253, 1255 (11th Cir. 2000) (grabbed, thrown against vehicle, kneed in back, head shoved against van), Gold v. City of Miami, 121 F.3d 1442, 1446 (11th Cir. 1997) (painful handcuffing with abrasions), and Post v. City of Ft. Lauderdale, 7 F.3d 1552, 1559-60 (11th Cir. 1993) (pushed against wall).

In this case, the plaintiff has the burden to demonstrate a violation of clearly established law. She has not done that.

"A plaintiff cannot strip a § 1983 defendant of her qualified immunity by citing to general rules or abstract rights." Wilson v. Strong, 156 F.3d 1131, 1134 (11th Cir. 1998). "Qualified immunity is a sharply focused, situation bound analysis." Crosby v. Paulk, 187 F.3d 1339, 1345 (11th Cir. 1999).

"This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier v. Katz, 533 U.S. 194, 201 (2001).

"For the law to be 'clearly established,' case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." Priester v. City of Riviera Beach, 208 F.3d 919, 926 (11th Cir. 2000).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001).

"Government officials are not required to err on the side of caution." Marsh v. Butler County, 268 F.3d 1014, 1031 (11th Cir. 2001). "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed." Saucier v. Katz, 533 U.S. 194, 205 (2001).

"All the Constitution requires is that the force used be objectively reasonable, not that it be the absolute minimum necessary." Harrell v. Decatur

14

County, 22 F.3d 1570, 1579 n.1 (11th Cir. 1994) (Dubina J., dissenting), *majority opinion vacated and dissenting opinion adopted*, 41 F.3d 1494 (11th Cir. 1995).

"The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means." Illinois v. Lafayette, 462 U.S. 640, 647 (1983).

"The Fourth Amendment does not require officers to use the least intrusive or even less intrusive alternatives in search and seizure cases. The only test is whether what the police officers actually did was reasonable." Plakas v. Drinski, 19 F.3d 1143, 1148 (7th Cir. 1994), *quoted with approval in* Menuel v. City of Atlanta, 25 F.3d 990, 996-97 (11th Cir. 1994).

The alleged facts do not show a violation of clearly established law. Captain Patterson, Officer McGowin, and Officer Raines are entitled to qualified immunity against the use of force claim.

### V. THE FIFTH AMENDMENT CLAIM

The plaintiff did not address her Fifth Amendment Miranda warning claims in her response. She has abandoned those claims. See Flanigan's Enters., Inc. v. Fulton County, Ga., 242 F.3d 976, 987 n.16 (11th Cir. 2001); Ladner v. Litespeed Mfg. Co., 537 F. Supp.2d 1206, 1217 (N.D. Ala. 2008); Haney v. Eaton Elec., Inc., 528 F. Supp. 2d 1262, 1270 (N.D. Ala. 2007).

In any event, Supreme Court precedent bars those claims. See Chavez v. Martinez, 538 So. 2d 760, 772 (2003) ("Chavez's failure to read Miranda warnings to Martinez did not violate Martinez's constitutional rights and cannot be grounds for a § 1983 action"); Schmerber v. California, 384 U.S. 757, 761 (1966)

15

("We hold that the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature, and that the withdrawal of blood and use of the analysis in question in this case did not involve compulsion to these ends.").

## VI.  THE MUNICIPAL LIABILITY CLAIM

The plaintiff's municipal liability claim focuses on a non-issue. The plaintiff based her claim upon the operation of an allegedly unconstitutional roadblock. (See Compl. at 10-12, ¶¶ 44-48.)

However, the plaintiff was not seized by the roadblock. See Brendlin v. California, 127 S. Ct. 2400, 2405 (2007) ("there is no seizure without actual submission"); California v. Hodari D., 499 U.S. 621, 626 (1991) ("The narrow question before us is whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the suspect does not yield. We hold that it does not.").

The alleged facts do not show an underlying constitutional violation upon which to base a municipal liability claim. Simply put, the complaint does not allege that the plaintiff was actually seized by an unconstitutional roadblock. See County of Sacramento v. Lewis, 523 U.S. 833, 845 n.7 (1998) ("Attempted seizures of a person are beyond the scope of the Fourth Amendment.")

Because the complaint does not allege a seizure at the roadblock, the plaintiff's municipal liability claim fails for lack of an underlying constitutional

violation. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (holding municipal liability claim will not lie absent underlying constitutional violation).

All claims against the City of Andalusia should be dismissed.

### VII.  THE SUPERVISOR LIABILITY CLAIM

Because the complaint does not allege an underlying constitutional violation, it also does not state a § 1983 supervisor liability claim. Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) ("supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.").

In the absence of an underlying constitutional violation, Capt. Patterson is entitled to qualified immunity against the plaintiff's supervisor liability claim. See Baker v. McCollan, 443 U.S. 137, 142 (1979) ("a public official is liable under § 1983 only if he causes the plaintiff to be subjected to deprivation of his constitutional rights").

### VIII.  THE OFFICIAL CAPACITY CLAIMS

The plaintiff's response does not dispute the individual defendants' argument for dismissal of the official capacity claims. See Busby v. City of Orlando, 931 F.2d 764 (11th Cir. 1991) ("Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials").

## IX.  CONCLUSION

The complaint's allegations do not demonstrate a constitutional violation, or a violation of clearly established law.  Captain Patterson, Officer McGowin, and Officer Raines are entitled to qualified immunity against all claims, and all defendants are entitled to the dismissal of all claims.

          **s/ James H. Pike**
          James H. Pike (PIK003)
          Attorney for Defendants
          The City of Andalusia, Alabama, Capt. Rusty Patterson, Officer Steven McGowin, and Officer Darren Raines

OF COUNSEL:

SHEALY, CRUM & PIKE, P.C.
P.O. Box 6346
Dothan, Alabama  36303-6346
Tel. (334) 677-3000
Fax (334) 677-0030
E-mail: jpike@scplaw.us

**CERTIFICATE OF SERVICE**

I, James H. Pike, certify that on May 15, 2008, I electronically served this document upon:

James R. Murray
420 East Pine Avenue
Crestview, Florida  32536

Eric D. Stevenson
WHIBBS, RAYBOUN & STONE
105 East Gregory Square
Pensacola, Florida  32502

**s/ James H. Pike**
James H. Pike