IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| ABBEY MARIE JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:08cv157-MHT |
| | ) | (WO) |
| ANDALUSIA POLICE | ) | |
| DEPARTMENT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

OPINION AND ORDER

In this illegal-seizure and excessive-force lawsuit,
plaintiff Abbey Marie Johnson names as defendants the
Andalusia Police Department and three of its officers,
Captain Rusty Patterson, Officer Darren Raines, and
Officer Steven McGowin.  Johnson asserts, pursuant to 42
U.S.C. § 1983, that the defendants violated her civil
rights under the Fourth, Fifth, and Fourteenth Amendments
to the United States Constitution.  Jurisdiction is
proper under 28 U.S.C. §§ 1331 (federal question) and
1343 (civil rights).

This case is currently before the court on the defendants' motion to dismiss on the grounds of qualified immunity and for failure to state a claim. The motion will be granted in part and denied in part.

## I. STANDARD FOR THE MOTION TO DISMISS

In addressing a motion to dismiss, the court will consider only the facts contained within the four corners of the complaint. St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002). The court accepts the plaintiff's allegations as true, Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), and construes the complaint in the light most favorable to the plaintiff, Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). To survive a motion to dismiss, a complaint need not contain "detailed factual

2

allegations." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  The complaint must incorporate "only enough facts to state a claim to relief that is plausible on its face." <u>Id</u>. at 1974.  The court is thus concerned with whether Johnson has provided enough factual matter that, if true, would raise a reasonable expectation that discovery will reveal evidence that entitles her to relief.  <u>See id.</u> at 1965.

While the defendants did not argue in their brief in support of their motion that a heightened-pleading standard should apply in this case, Johnson argues in her brief that <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007), has made clear that no heightened standard applies in § 1983 actions.  However, the defendants have replied by correctly noting that there is no indication in <u>Erickson</u> that the defendants in that case invoked a defense of qualified immunity, and the Eleventh Circuit Court of Appeals has recently reaffirmed that the heightened-pleading requirement applies in cases in which qualified

immunity has been invoked.  <u>Danley v. Allen</u>, 540 F.3d 1298, 1313-14 (11th Cir. 2008).  This heightened standard would require facts to be alleged "with some specificity" in order to protect against allegations that are "vague and conclusory."  <u>Id</u>. at 1314.  Nonetheless, as discussed later, the defendants do not argue that Johnson has failed to plead sufficient facts and, under either pleading standard, the result in this case would be the same.

The court now turns to the facts as stated in Johnson's complaint.


## II. BACKGROUND

On August 26, 2006, Johnson, then age 17, was driving home when she approached the area of River Falls Street in Andalusia, Alabama.  It was approximately 10:00 p.m., and she had just left a nearby parking lot where she had been with her boyfriend and her best friend.  As Johnson approached the area, she observed blue flashing lights in

the street ahead of her.  Believing that there was an accident in the road in front of her, she pulled into a parking lot and turned around in order to take a different route home.

The flashing lights Johnson observed were, in actuality, a police roadblock.  Police did not, however, post any signs, place any cones, light any flares, or otherwise indicate to incoming drivers that a license-checkpoint roadblock was being conducted.  Moreover, officers gave Johnson no directions to stop as she approached or as she left the area.

As she drove away, Johnson observed all relevant traffic regulations, including maintaining a lawful speed.  Officer Raines, who was at the checkpoint, had observed Johnson pull into a parking lot and drive away, and he communicated over radio that a "runner" was attempting to avoid the roadblock.  Officers then went to their cars and began a high-speed pursuit of Johnson's car.

Johnson, unaware of the pursuit just initiated, passed by the parking lot from which she had just come and noticed that her boyfriend and friend were still there. Curious about why they had not left yet, she pulled into the parking lot and exited her car. Seconds later, as she stood outside her car, officers sped into the lot. Officer McGowin screamed at Johnson and ran toward her. He grabbed her by the neck and threw her against her car. Johnson was handcuffed and told that she was under arrest. Johnson was crying and begging officers to explain why she was under arrest. The incident was captured on video by both the camera located in McGowin's vehicle and by an independent bystander.

Johnson was not only a minor but was also "petite in height and stature." Pl.'s Compl., at 6. She had no prior experience with law enforcement, and she was terrified and confused as she asked officers to explain what was happening. Officer McGowin led Johnson, who was still handcuffed, to a police vehicle and told her to

stay there.  McGowin then forced Johnson to take a breath test.  The results showed that Johnson had not had any alcohol.  Officer McGowin then conferred with Officer Raines and Captain Patterson, who had arrived as McGowin was arresting Johnson.  The officers decided to release Johnson with a citation.

Attempting to explain the confrontation and the citation, Raines told Johnson that she had refused to obey his order to stop her vehicle as she was turning around some distance from the roadblock.  No order was ever made, however.  Several more minutes passed before the handcuffs were removed and Johnson was allowed to leave.  Johnson was subsequently found "not guilty" of the refusal-to-obey charge in municipal court.


## III. DISCUSSION

Johnson asserts three categories of constitutional claims against Officers McGowin, Rains, and Patterson in their individual capacities.  Relying on the Fourth and

7

Fourteenth Amendments, Johnson asserts, first, that McGowin illegally seized and arrested her after she returned to the parking lot and, second, that McGowin subjected her to an unconstitutionally excessive use of force during her arrest. Third, Johnson asserts that her rights under the Fifth and Fourteenth Amendments were violated when McGowin required her to take a breath test and when she was questioned without being advised of her rights against self-incrimination. Based on these three claims, Johnson also asserts a claim of supervisory liability against Patterson and claims against both Patterson and Raines for failure to intervene to prevent the violations of her Fourth and Fifth Amendment rights. Johnson also asserts a claim of governmental liability against the Andalusia Police Department as well as against the three officers to extent they are sued in their official capacities. The court will address each of these issues in turn.

8

> A.  Officers McGowin, Raines, and Patterson in
> Their Individual Capacities:  Qualified Immunity

Officers McGowin, Raines, and Patterson contend that they are entitled to qualified immunity and, as a result, Johnson's complaint should be dismissed to the extent she has sued them in their individual capacities.  The parties do not dispute that the officers were acting in their discretionary authority when the incident occurred.  As a result, the burden is on Johnson to allege facts that, when read in the light most favorable to her, show that the officers are not entitled to qualified immunity. See Cottone v. Jenne, 326 F.3d 1352, 1358 (11th Cir. 2003).

The question of qualified immunity will be answered using a two-step analysis: First, the court will determine whether Johnson's allegations, if true, establish a constitutional violation.  Second, if the facts suggest that a constitutional right has been violated, the court will determine if that right was

clearly established.  See Hope v. Pelzer, 536 U.S. 730, 736, 739 (2002); Garrett v. Athens-Clarke County, 378 F.3d 1274, 1278-79 (11th Cir. 2004); see also Pearson v. Callahan, 129 S.Ct. 808 (2009) (noting that, while no longer mandatory, this two step inquiry is still appropriate and still asks the right questions).  A right is clearly established--and an officer cannot receive qualified immunity--if the "objectively reasonable police officer" would have realized that the conduct violated the constitution.  Davis v. Williams, 451 F.3d 759, 762 (11th Cir. 2006).

### 1. The Initial Seizure and Arrest

The complaint alleges that, as soon as the officers arrived in the parking lot, Johnson was grabbed by the neck, thrown, handcuffed, informed that she was under arrest, detained, taken to a police vehicle away from her car, and given a breath test.  This conduct constituted a seizure of Johnson's person.

The law is clearly established that officers must have probable cause to place a person in custody. <u>Davis</u>, 451 F.3d at 764 ("There is no question that ... it is clearly established that an arrest made without probable cause violates the Fourth Amendment."); <u>see also, e.g.</u>, <u>United States v. Brignoni-Ponce</u>, 422 U.S. 873, 882 (1975) (noting that any "further detention or search" beyond investigative questioning pursuant to <u>Terry</u> "must be based on consent or probable cause."). The record is clear that probable cause did not exist here. Indeed, McGowin does not even attempt to argue that conduct like Johnson's could establish probable cause for a seizure and arrest for a violation of any particular law.

Because McGowin never attempts to make a probable-cause argument, he does not point to any specific laws the violation of which could have been the basis for Johnson's seizure. Instead, McGowin attempts to establish the reasonableness of what he refers to as an

11

"investigatory stop."[1]   He argues that, "under the complaint's alleged facts, Officer McGowin's decision to make an investigatory stop was supported by reasonable suspicion" and that "the dispositive issue in this case is whether or not Officer McGowin had reasonable suspicion, or arguable reasonable suspicion."  Defs.' Brief, at 13, 9.  McGowin then cites to and quotes several times from Terry v. Ohio, 392 U.S. 1 (1968), asserting casually that the complaint "depicts a lawful investigatory stop."  Defs.' Brief, at 6.  First, under the facts here, even a conclusion of reasonable suspicion might be troubling.  Indeed, the National Highway and

---

     1.  As a result of this characterization, the parties argue at length about whether Johnson's lawful behavior at the roadblock could give rise to reasonable suspicion and, if so, whether the roadblock was constitutionally administered and, if not, whether that matters.  The court finds it unnecessary for the purpose of Johnson's claims to resolve the constitutional question of whether the roadblock was proper in light of Johnson's allegations that it was operated without any written or oral guidelines to limit the discretion of officers in violation of the principles outlined in Delaware v. Prouse, 440 U.S. 648, 661 (1979), and Michigan Department of State Police v. Sitz, 496 U.S. 444, 452-53 (1990).

Transportation Safety Administration, in a guide for roadblock checkpoints drafted with the help of many state-law enforcement agencies, states that avoiding a checkpoint is <u>not</u> grounds for a stop.  <u>See</u> <u>State v. Heapy</u>, 151 P.3d 764, 783 (Haw. 2007) (citing "The Use of Sobriety Check Points For Impaired Driving  Enforcement" US DOT, NHTSA, DOT HS 807 656 at A-3 (November, 1990). But more importantly and to the point, as Johnson argues, "the[] allegations, alone, if proven, show that there was no investigatory stop." Pl.'s Brief, at 14.  The facts at this juncture clearly establish that <u>Johnson was placed under arrest</u>.  Even McGowin repeatedly refers to the encounter as a "seizure."  <u>See, e.g.</u>, Defs.' Brief, at 9.

Indeed, referring to the interaction as anything else would be impossible while reading the complaint in the light most favorable to Johnson.  The complaint alleges that Johnson approached the roadblock from a distance and turned around before she could tell whether the roadblock was a car accident or some other phenomenon.  The

complaint alleges that Johnson did not violate any other
traffic regulations and was never told to stop her
vehicle before she left or while she was driving.
Johnson's version of events must be taken as true.
Though the complaint alleges that Raines later told
Johnson that she had refused to obey an order, it also
specifically alleges that Johnson claimed such an order
was never made or communicated to her.  While certain
facts shed limited circumstantial light on this factual
dispute (for example, the fact that Johnson was not
actually concealing any illegal activity, that she was
found not guilty of this offense, that she was some
distance from the checkpoint at the time an order could
have been made, and that any order would likely have to
have been made after Johnson turned the approaching car
away from officers), this factual dispute is precisely
the kind of issue that must be assumed in Johnson's favor
at this point.  McGowin, no doubt realizing this, has not
attempted to base any arguments on such an order before

14

this court.  <u>Cf.</u> 1975 Ala. Code § 32-5A-4 (directing that no person "willfully" refuse to comply with a "lawful" order of someone with the authority to regulate traffic).

As a result, any reasonable officer in McGowin's position would have known that he could not have placed Johnson under arrest.  No even "arguable" probable cause existed.  <u>See</u> <u>Davis v. Williams</u>, 451 F.3d 759, 762-763 (11th Cir. 2006) (holding that qualified immunity applies only if an officer had "arguable probable cause" to arrest).

Both Johnson's alleged forceful seizure and detention and her subsequent citation lacked probable cause. Johnson has alleged conduct that, if true, would violate a clearly established constitutional right to be free from seizure of her person and arrest without probable cause.

## 2. Excessive Force

Johnson also claims that McGowin used excessive force when he allegedly ran toward her, grabbed her by the neck, threw her against her car, and forcibly handcuffed her.

The use of excessive force in making an arrest violates the Fourth Amendment.  Thornton v. City of Macon, 132 F.3d 1395, 1400 (11th Cir. 1998).  Whether the force used by police officers is excessive depends heavily on the context.  The Supreme Court has identified some particularly relevant factors in evaluating the circumstances of any particular case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Bashir v. Rockdale County, 445 F.3d 1323, 1333 & n. 10 (11th Cir. 2006) (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).   The force used must be "reasonably

16

proportionate" to the need for the officer to resort to that force under the circumstances.  <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1198 (11th Cir. 2002).  "An officer will be entitled to qualified immunity if his actions were objectively reasonable--that is, if a reasonable officer in the same situation would have believed that the force used was not excessive."  <u>Davis</u>, 451 F.3d at 767 (quoting <u>Thornton</u>, 132 F.3d at 1400) (internal quotation marks omitted).

McGowin correctly argues that, in determining the reasonableness of the force used, the court should evaluate the circumstances from the perspective of the officers.  <u>Robinson v. Arrugueta</u>, 415 F.3d 1252, 1255 (11th Cir. 2005).  Thus, for example, Johnson's subjective unawareness of sirens behind her (the complaint asserts that her windows were rolled up and that she was listening to music) as she pulled into the parking lot is not very significant when examining what a reasonable officer would believe.  Based on the facts

17

as asserted by Johnson, then, the court must examine what an objectively reasonable police officer would have known was excessive force.

An examination of the circumstances of this case as asserted in the complaint demonstrates that the force allegedly used on Johnson was unreasonable and excessive by any definition. Officer Raines observed Johnson approach the area of the roadblock from a distance, turn into a parking lot, and drive away from the area of the checkpoint. No order was given for her to stop. Officers went to their cars and began pursuing Johnson, who was driving at a lawful rate of speed some distance ahead of them. When officers observed Johnson turn into a parking lot, they followed. Johnson, a minor and petite in both height and weight, was standing outside her vehicle when multiple police cars sped into the parking lot. She was not attempting to flee or otherwise threatening the officers in any way. Officer McGowin charged toward Johnson, screaming at her, seizing her

neck, and throwing her against her car before forcibly handcuffing her.  As witnesses watched and videotaped, McGowin refused to answer Johnson's desperate questions about why he was arresting her.  He kept her handcuffed until after he forcibly led her to his car and required her to take a breath test; he released her several minutes after conferring with fellow officers.

The factors outlined in <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989), clearly suggest that the force allegedly used by McGowin was excessive.  As noted earlier, McGowin did not have probable cause to arrest Johnson for any crime.  Any of the possible crimes which McGowin could plausibly have thought to motivate his allegedly violent actions (even though he should have known that he did not have probable cause), including the offense that he eventually charged--refusing to obey a traffic order--are not serious offenses that suggest he would have been confronted with a dangerous defendant.[2]  Moreover, when

---

2.  Johnson was obeying all traffic regulations.
(continued...)

McGowin exited his vehicle and saw the small, 17-year old Johnson standing in the parking lot, she was not running or fleeing, and nothing suggested that she was otherwise an immediate danger to anyone.  See, e.g., Vinyard v. Wilson, 311 F.3d 1340, 1347-48 (11th Cir. 2002) (applying the Graham factors).

The Eleventh Circuit's opinion in Thornton v. City of Macon, 132 F.3d at 1396-1400, is instructive.  In that case, the plaintiffs were arrested for felony obstruction even though there was no probable cause.  Thornton simply requested that police leave his property and refused a request by police to return a set of keys to a third

---

2.  (...continued)
While McGowin highlights the complaint's reference to a brief high-speed pursuit, he ignores that it was the officers who engaged in a high-speed pursuit of Johnson, no doubt because she had a considerable head start on them because she had turned around before coming to the roadblock.  Moreover, the defendants never charged Johnson with any other offense.  Even if they believed that she was fleeing officers, an implausible assumption given that she drove at a normal rate of speed, pulled into a public parking lot, and remained standing outside her car, the level of force used against her was far beyond what was necessary or warranted for the protection of officers or to prevent further flight.

20

party.  Cravey was arrested after asking officers if he could enter Thornton's house to use the phone and after a search revealed a pocket knife on him.  In the course of the arrest, "officers grabbed Thornton and wrestled him to the ground, and threw Cravey on the hood of one of the patrol cars before handcuffing him."  <u>Id</u>. at 1400. The court analyzed the factors outlined in <u>Graham</u> and found that neither plaintiff was "suspected of having committed a serious crime, neither posed an immediate threat to anyone, and neither actively resisted arrest." <u>Id.</u> at 1400.  The court thus concluded that, "[u]nder the circumstances, the officers were not justified in using <u>any</u> force, and a reasonable officer thus would have recognized that the force used was excessive."  <u>Id.</u> (emphasis in original).

Similarly, had McGowin even had reason to stop or seize Johnson at all, he could have attempted to do so without "using <u>any</u> force."  <u>Thornton</u>, 132 F.3d at 1400. Instead, taking the allegations in Johnson's complaint as

21

true, the court concludes that the decision to run toward Johnson, grab her by the neck, and throw her against a vehicle before handcuffing her was so inappropriate and excessive under the circumstances and under the factors described in <u>Graham</u>, that no reasonable officer could have thought it warranted.

McGowin asserts that this use of force was "de minimus." He also claims that "it is beyond question that a police officer may use physical force to effect an investigatory stop." <u>Id</u>. at 13. These statements, however, merely beg the question. The court's job is to determine what amount of force <u>should be considered</u> "de minimus," and further, whether factors about the circumstances warrant the exercise of a certain amount of force. The mere platitude that officers <u>could</u> use force or the threat of force to investigate or arrest merely affirms the obvious reality that officers are sometimes placed in dangerous situations in which a resort to force is necessary. It says nothing, however, about whether

they can or should use that force in any particular
situation.  Thus, the cases cited by the defendants
indicate that officers "may" use force or the threat of
force, but they simply do not stand for the proposition
that McGowin can use force, let alone the force used
here, in <u>every single arrest</u> or investigatory stop.

Grabbing a small, 17-year-old girl by the neck and
throwing her against a car before forcibly handcuffing
her is not "de minimus," and it is clearly excessive
under the circumstances alleged in the complaint.
Because the motion to dismiss would have the court
suggest otherwise, it is denied with respect to this
claim.

The court now turns to one final matter relevant to
this claim.  Because the initial seizure and arrest was
illegal, the court must ask whether the excessive force
claim should be merged with the unlawful arrest claim.
<u>Bashir v. Rockdale County</u>, 445 F.3d 1323, 1331-32 (11th
Cir. 2006) ("Under this Circuit's law ... a claim that

any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim." (quoting <u>Jackson v. Sauls</u>, 206 F.3d 1156, 1171 (11th Cir. 2000)).[3]

Unlike in <u>Bashir</u>, Johnson has not alleged that the force was excessive <u>only</u> because the seizure was illegal. <u>See Bashir</u>, 445 F.3d at 1332 ("[W]here an excessive force claim is predicated solely on allegation the arresting officer lacked the power to make an arrest, the excessive force claim is entirely derivative of, and is subsumed within, the unlawful arrest claim."). Although she does make that argument at one point, the other arguments and cases cited by Johnson show that she is arguing that even if reasonable suspicion or probable cause existed, the force employed was excessive. Thus, here, only one of

---

3. The court added: "This is not to say that Bashir cannot recover damages for the force used in his arrest. To the contrary, the damages recoverable on an unlawful arrest claim include damages suffered because of the use of force in effecting the arrest...." <u>Bashir</u>, 445 F.3d at 1332 (internal quotations and citations omitted).

multiple bases for the excessive force claim is that
basis identified in <u>Bashir</u>.

Nonetheless, because Johnson explicitly does claim
that, because the arrest was illegal, any force applied
was unconstitutional, the court will, at this juncture,
view her illegal arrest and excessive-force claims as
merged, for that is all that is necessary for the issues
to go forward.  However, if, after discovery, the facts
developed in the litigation establish that there was
reasonable suspicion or probable cause for her stop or
arrest, the claims will be re-separated so that the
issues of illegal arrest and excessive-force can be
considered separately.  The parties are on notice of this
possibility.


### 3. Fifth Amendment

Johnson asserts that Officer McGowin violated her
Fifth Amendment rights by forcing her to take a breath
test and by questioning her in custody without advising

her of her right against self-incrimimation.  However,
Johnson makes no mention of this claim (much less offer
any argument to support it) in her brief in opposition to
the motion to dismiss.  As a result, the court considers
this claim waived.  <u>See</u> <u>Flanigan's Enterprises v. Fulton
County</u>, 242 F.3d 976, 987 n.16 (11th Cir. 2001).  The
court notes, however, that, even were the argument not
waived, Supreme Court precedent bars Johnson's claim
because McGowin's failure to advise her of her rights
prior to requiring the breath test and to questioning her
cannot be the basis of a § 1983 claim.[4]  <u>See</u> <u>Chavez v.
Martinez</u>, 538 U.S. 760, 772 (2003) (holding that, because
the Fifth Amendment protects against the use of coerced
statements at trial, not mere compulsion, a violation of

_____

    4.  While this conduct does not constitute a
violation of the Fifth Amendment, the allegation that
Johnson was forced to take a breath test might properly
be part of her Fourth Amendment claim for excessive force
or relevant to her damages under her illegal arrest
claim.  <u>See, e.g.</u>, <u>Herzog v. Village of Winnetka</u>, 309
F.3d 1041 (7th Cir. 2002) (permitting jury trial on
excessive force claims where officer, among other things,
forced a breath-screening device into plaintiff's mouth).

the requirements set forth in <u>Miranda v. Arizona</u>, 384
U.S. 436 (1966), did not give rise to a § 1983 claim).


4. Supervisory Liability and Failure to Intervene

Johnson also asserts a claim against Patterson for
not properly supervising McGowin and a claim against both
Raines and Patterson for failing to intervene to protect
her rights.

It is clear that Captain Patterson cannot be liable
for the acts of Officer McGowin under a theory of
respondeat superior. <u>Hartley v. Parnell</u>, 193 F.3d 1263,
1269 (11th Cir. 1999). However, "supervisory liability
under § 1983 occurs either when the supervisor personally
participates in the alleged unconstitutional conduct or
when there is a causal connection between the actions of
a supervising official and the alleged constitutional
deprivation." <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360
(11th Cir. 2003). Johnson vaguely asserts in her
complaint that Patterson's failure to supervise McGowin

resulted in her unconstitutional seizure.  However, she does not indicate how his supervisory actions contributed to McGowin's unlawful actions.[5]  Indeed, in her brief, Johnson appears to abandon the supervisory claim, arguing instead that "Patterson was a direct participant in the actions that led to her arrest."  Pl.'s Brief at 20.  As a result, the court will treat the claims against both Patterson and Raines as claims that they directly participated by failing to intervene.

In order to be liable for failing to intervene when other officers are committing constitutional violations, an officer must be in a position to intervene.  Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir. 1998).  When an officer is in a position to intervene, "it is clear that if a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such

---

5.  Johnson's complaint asserts that Patterson, as a supervisor, was responsible for the illegality of the roadblock.  However, as discussed later, there is nothing to indicate that the putative constitutional infirmities in the roadblock were causally linked to the deprivations that Johnson suffered.

as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." Id. (quoting Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986).

Patterson and Raines argue that they cannot be liable because the facts in the complaint do not establish that they were in a position to intervene.  In evaluating this claim, the court must, as always, interpret the relevant facts in the light most favorable to Johnson.   The most directly relevant portion of the complaint alleges that several police cars entered the parking lot at the same time as McGowin and that: "As McGowin was arresting the Plaintiff, Patterson and Raines arrived at the parking lot.  Patterson and Raines both allowed the Plaintiff to continue in custody and did not intervene to protect the Plaintiff from McGowin."  Compl. at 9.

For present purposes, the court will divide Johnson's failure to intervene claim into two parts: first, the initial seizure and the use of excessive force; and

second, the continued seizure and detention followed by the citation.

Patterson and Raines cannot be liable for failure to intervene with respect to the first category of conduct. Johnson's complaint does not allege enough facts to allow the court to conclude that Patterson and Raines were present and in a position to intervene at the moment McGowin <u>first</u> forcibly seized her.

However, Patterson and Raines can be liable for the second category of McGowin's conduct. Johnson was illegally arrested (indeed, no one suggests that probable cause to arrest her existed), and because the complaint alleges that Patterson and Raines arrived at the scene as this initial illegal arrest was taking place and prior to her continued illegal detention, the court must allow the claims against them to stand.[6]  The plain language of the

---

6.  As noted earlier, the complaint also alleges that as Johnson stood in the parking lot, multiple police cars arrived at the same time as McGowan.  Thus, McGowin may have been the only one to approach and touch her right away, but all three officers were thus present for the (continued...)

facts states that the officers arrived "[a]s McGowin was arresting the Plaintiff." The complaint does not say that the other officers arrived after the arrest had been completed. They were in a position to intervene in the illegal seizure and detention, and they did not.[7]

Moreover, Patterson and Raines were present when Johnson was unlawfully given a citation for the misdemeanor offense of refusing to obey an order. The complaint asserts that McGowin, prior to improperly citing Johnson for this misdemeanor and continuing to detain her for several minutes, conferred with Raines and Patterson. Because McGowin's continued seizure and

---

6. (...continued)
duration of the lengthy, unlawful detention that followed the initial forcible seizure, and all three officers had the same information about her conduct, including Raines, who initially began the pursuit at the roadblock by shouting that Johnson was a "runner."

7. Moreover, the two officers allowed McGowin to forcibly take her over to the police car, question her, and force her to conduct a breath test. They knew, just like McGowin, that there was no probable cause to detain her, yet they allowed her to remain in custody and handcuffed.

31

citation were unlawful, Patterson and Raines could and should have stopped them.

As a final matter, Johnson also faults Patterson and Raines for their roles in permitting Johnson's Fifth Amendment rights to be violated. These claims are dismissed for the reasons stated in the previous discussion dismissing the similar claim brought against McGowin.


### B. Andalusia Police Department and Officers McGowin, Raines, and Patterson in Their Official Capacities: Governmental Liability

Johnson's claims against the Andalusia Police Department must fail because police departments are generally not considered legal entities subject to suit. See Dean v. Barber, 951 F.2d 1210, 1214-15 (11th Cir. 1992). Moreover, even if the police department were a suable entity, Johnson's claims would still fail.

Johnson bases her governmental-liability claims on the police department's putative failures to conduct a

constitutionally proper roadblock.  Johnson has failed to
state a claim for governmental liability.  First, it is
well established that Johnson cannot recover from a
government based solely on a theory that it is
vicariously liable for the conduct of its officers.  See
Monell v. Department of Social Services, 436 U.S. 658,
694 (1978).

Second, the facts fail to state a claim for direct
governmental liability.  Governmental liability may be
imposed when federal rights are violated "pursuant to
official municipal policy of some nature."  Id. at 691.
Johnson correctly notes that this official policy can be
established through only a single decision by a municipal
policymaker.  See Pembaur v. City of Cincinnati, 475 U.S.
469, 480 (1986).  Thus, theoretically, a decision to
conduct a roadblock without the proper constitutional
safeguards could subject a police department to
liability.  However, Johnson has not alleged facts that
show that the putatively unlawful policy caused the

33

violation of her rights. The Supreme Court has instructed that courts must carefully scrutinize the link between the allegedly improper conduct and the constitutional violation at issue. See Board of the County Commissioners v. Brown, 520 U.S. 397, 404 (1997) (holding that a plaintiff "must demonstrate a direct causal link between the municipal action and the deprivation of federal rights"). Here, Johnson's rights were violated not because officers were conducting a roadblock without the proper procedures, but rather because officers forcibly arrested her without probable cause. This conduct, while improper, had nothing to do with the roadblock. Johnson's avoidance of the roadblock might have been the initial reason for the officers to make contact with her, but their actions after making contact with her cannot fairly be said to have been the result of any police-department policy, at least given the facts alleged in the complaint.

34

It should also be noted that the beginning of Johnson's complaint indicates that she brings suit against the officers in their official capacities. However, "suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent [and] there no longer exists a need to bring official-capacity actions against local government officials...." Busby v. City of Orlando, 931 F.2d 764 (11th Cir. 1991). Therefore, by suing the officers in their official capacity, Joshnson has, in effect, sued the City of Andalusia. However, for the same reasons discussed above with respect to the police department, a claim of direct or vicarious municipal liability against the city (that is, the officers in their official capacities) must fail.

* * *

It should be emphasized again that the court has reached the above conclusions based solely on the allegations in the complaint. The court has assumed, as

35

it must on a dismissal motion, that the allegations are true; whether they are, in fact, true, is not resolved. It should also be emphasized that, while the court has allowed certain claims against certain defendants to go forward, it is only to the extent that the parties may now engage in discovery on those claims. Whether, after discovery, the claims will survive summary judgment and thus go to trial is not at issue at this time.

For the foregoing reasons, it is ORDERED that:

(1) Defendants Andalusia Police Department, Rusty Patterson, Darren Raines, Steven McGowin's motion to dismiss (doc. no. 12) is denied as to (a) plaintiff Abbey Marie Johnson's claims for unlawful arrest and excessive force (as merged) against defendant McGowin in his individual capacity and (b) plaintiff Johnson's claim for failure to intervene in the 'continued' unlawful seizure asserted against defendants Patterson and Raines in their individual capacities;

(2) The motion is granted in all other respects, with the result that (a) all remaining claims are dismissed, (b) defendant Andalusia Police Department is dismissed, and (c) defendants McGowin, Patterson, and Raines are dismissed in their official capacities.

DONE, this the 19th day of March, 2009.


    /s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE